COMMONWEALTH *vs.* RICHARD P. SLANEY
(and a companion case between the same parties).

Middlesex.   October 1, 1962. — November 8, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Assault.   Constitutional Law,* Self incrimination.   *Practice, Criminal,* Judicial discretion, Requests, rulings and instructions.

A verdict of guilty at the trial of an indictment for assault by means of a dangerous weapon was warranted by evidence that the defendant pointed a loaded revolver at the victim and threatened to shoot him, irrespective of whether there was fear or apprehension of harm on the part of the victim.   [137–139, 141]

It was within the discretion of the judge at a criminal trial, acting on his own initiative, to advise a witness under cross-examination by the defendant of his right to refuse to answer a question by reason of his constitutional privilege against self incrimination if the judge thought there was reasonable ground to apprehend danger to the witness in answering.   [141–142]

In a criminal case heard without jury, no question of law was presented by an exception to the denial of a request which was essentially for a finding of fact.   [142]

INDICTMENT found and returned on September 7, 1961.

The case was heard in the Superior Court by *Taveira, J.*, without jury.

*Alfred P. Farese* for the defendant.

*Ruth I. Abrams,* Assistant District Attorney (*Roger E. Gordon,* Assistant District Attorney, with her), for the Commonwealth.

KIRK, J.   The defendant Slaney was found guilty on two indictments, one charging him with assault and battery by means of a dangerous weapon on Mary Bowen and the other charging him with assault by means of a dangerous weapon on Joseph A. DeVincentis.   Both offences, it was alleged, were committed at Cambridge on August 3, 1961. Trial was had in the Superior Court without jury.   G. L. c. 263, § 6, as amended.   The cases, made subject to G. L.

c. 278, §§ 33A–33G, come to us upon appeals accompanied by seven assignments of error which for our purposes may be grouped into four. The defendant contends that the judge committed error: (1) in his refusal to rule that the defendant was not guilty as a matter of law on the indictment charging assault with a dangerous weapon on DeVincentis; (2) in his orders and rulings during the defendant's cross-examination of the witness Bowen; (3) in his denial of requests for rulings relating to the weight of the evidence; and (4) in his denial of the defendant's motion for a new trial.

Consideration of the first assignment of error requires that we state the facts which the judge could find. For a year and half to two years before the alleged offence, the defendant, a married man, and Mrs. Bowen, a married woman separated from her husband, had frequently been in one another's company. Shortly before the alleged offence there was a change in Mrs. Bowen's attitude toward the defendant. On the night of August 2, 1961, the defendant went to the Oxford Grille, a restaurant and bar in Cambridge owned by DeVincentis, where Mrs. Bowen was employed as a waitress. He persistently asked Mrs. Bowen to wait on him and to see him after work. She refused. The defendant remained on the premises. Toward closing time (midnight) DeVincentis asked the defendant not to bother Mrs. Bowen and to leave the place. The defendant left. At 1:15 A.M. when DeVincentis and Mrs. Bowen left the restaurant and were crossing the street toward a lot where DeVincentis's car was parked, a car driven by the defendant emerged from a nearby alley at high speed and stopped in front of the entrance to the lot. The defendant got out of his car, approached Mrs. Bowen and DeVincentis, and demanded that Mrs. Bowen go with him. During the talk which followed, DeVincentis explained that he merely was going to take Mrs. Bowen to a nearby taxi stand. The defendant "threw a punch," which just touched the top of DeVincentis's head. The defendant then pulled out a gun, pointed it "right at" DeVincentis, and advised him to start

praying because he was going to shoot Mrs. Bowen, DeVincentis, and himself. The defendant was seven or eight feet away from DeVincentis. Mrs. Bowen pleaded with him to put the gun away. DeVincentis told him he was "silly," and tried to move closer to the defendant in order to maneuver into a position to take the gun away from him. The defendant backed away and, while doing so, the gun was discharged. The bullet pierced Mrs. Bowen's handbag and dress. She felt a breeze on her right leg but she was not wounded. Police on foot patrol heard the shot, went to the scene, disarmed the defendant, and placed him under arrest.

DeVincentis testified that he was not afraid at any time; that when he tried to get closer to the defendant to maneuver to get the gun he was not afraid that he was going to be shot. However, he did not think it was a joke; he was trying to devise some plan to get the gun; he did not go up to him and grab the gun because the defendant would have "shot and let go."

The defendant's contention that he was entitled to a finding of not guilty on the charge of assault with a dangerous weapon on DeVincentis is based on his thesis that fear on the part of the victim is an essential element of the crime of assault, and that DeVincentis's testimony conclusively eliminates that element from the Commonwealth's case. We feel obliged to deal rather fully with this contention of the defendant because of the disposition which the judge made of one of the defendant's requests for rulings. The defendant's request number 14 was a paragraph of six sentences wherein the following two sentences appeared: ". . . To constitute an assault, the person assaulted must be put in actual fear and terror. Where there is no actual fear or terror there can be no assault. . . ." The judge granted request number 14 "as a correct statement of law," and appended to his ruling a special finding to the effect that the defendant fired the revolver and that immediately prior thereto and "at the time of the firing . . . both Mrs. Bowen and . . . DeVincentis were in a state of apprehension."

1. With respect to the crime of assault, as is frequently the case in our statutes relating to common law crimes, the Legislature has prescribed the penalty for the crime but has not defined the crime itself. G. L. c. 265, § 13A. For the definition of the crime of assault, resort must be had to the common law. *Commonwealth* v. *Webster,* 5 Cush. 295, 303.

(a) The defendant, in support of the proposition that proof of fear on the part of the victim is necessary to sustain a conviction of the crime of assault at common law, cites the definition given by a text writer.[1] This definition expresses a concept of common law assault which, as applied to the criminal law, is at variance with that held by the overwhelming number of authorities, both old and recent, who define the essentials of a common law assault in such familiar terms as: an attempt (or offer) to do bodily harm to another by force and violence; or simply, an attempt to commit a battery.[2] The words "coupled with a present ability and present intention" are frequently added to the former definition. The definition cited by the defendant has been specifically criticised,[3] and its concept has been expressly or impliedly rejected when the question has been presented in other jurisdictions.[4] So far as we are aware it has not been incorporated in the statutory definition for assault in the criminal codes of any of the States. Finally, obvious practical considerations militate against acceptance of the defendant's contention. The criminal

---

[1] 1 Bishop's New Criminal Law (8th ed., 1892) 337 defines "Assault" as including "a reasonable apprehension of immediate bodily harm."

[2] Among the authorities, exclusive of court decisions, thus defining assault are: 1 Hawkins, Pleas of the Crown (1821) c. XV, p. 110; Blackstone's Commentaries (21st ed., 1844) vol. III, § 120, vol. IV, § 216; 3 Greenleaf on Evidence (16th ed., 1899) § 59, p. 63; Underhill, Criminal Evidence (Pocket Edition, 1912) § 352, p. 610; Wharton's Criminal Law (12th ed., 1932) § 799, p. 1094; May's Criminal Law (4th ed., 1938) § 148, p. 247; Perkins on Criminal Law (1957) 79–80. See A. L. I., Model Penal Code, § 211.1 (1) (a) (Proposed Official Draft, May 4, 1962).

[3] May's Criminal Law (4th ed., 1938) § 148, footnote 1, comments that this definition is not supported by the cases. 11 Rocky Mountain L. Rev. (1939) 104, 107.

[4] *People* v. *Lilley,* 43 Mich. 521, 525. *Ross* v. *State,* 16 Wyo. 285, 299.

law is designed primarily to preserve the public peace. The imperturbability or fortitude of a victim, or the unawareness of an intended victim, should not afford a defence to the criminal prosecution of the wrongdoer. The guilt or innocence of a person charged with assault "depends entirely upon what the wrongdoer does and intends and not at all upon what the other apprehends, or does not apprehend." Perkins on Criminal Law (1957) 89. It follows from what we have said that in this Commonwealth neither fear, nor terror nor apprehension of harm is an essential ingredient of the common law crime of assault.

(b) It is urged upon us, nevertheless, that our own decisions give literal support to the defendant's contention. In particular, the defendant cites *Commonwealth* v. *White,* 110 Mass. 407, and *Ross* v. *Michael,* 246 Mass. 126. In the latter, a civil action for assault, the court applied to the case a summary adaptation, in negative terms, of the holding in *Commonwealth* v. *White.*[5] The court then quoted with approval the charge of the judge to the jury on the facts of the case then before it.[6] We think that the argument of the defendant rests upon a misapprehension of the issue which was before the court in each of the cases cited, with the result that there is a misconception of the holdings, and a misapplication of the language used to the case now under consideration. In *Commonwealth* v. *White,* 110 Mass. 407, a criminal case, the defendant contended that the gun with which he threatened the complainant was not

---

[5] The opinion says at p. 130, "Where an overt act is accompanied by a threat to do violence in case a condition imposed by the actor is not complied with, such act will not constitute an assault if it appears that there is no present purpose to do harm and the circumstances are such that the person threatened must have known that no present assault was intended. *Commonwealth* v. *White,* 110 Mass. 407."

[6] The opinion in *Ross* v. *Michael,* 246 Mass. 126, reads in pertinent part, p. 130: "Upon this branch of the case the judge correctly instructed the jury as follows: 'If a revolver was used in such a manner by the defendant . . . as to create in Mary [the plaintiff] a well grounded fear of personal injury, an assault was committed. If she did not have a well grounded fear then there was no assault. If the words claimed to have been used by the defendant . . . , "Mary, get out of the house or I will shoot you dead," amounted to a denial of any present purpose to do harm, or were used under such circumstances that Mary must have known that no present assault was intended, then the act was not an assault.' "

loaded, that he was consequently lacking in the present ability to do the harm threatened, and therefore should be found not guilty. In *Ross* v. *Michael,* 246 Mass. 126, a civil case, the defendant contended that the threatening words which accompanied the overt act were clearly conditional, that they revealed that he was lacking in any present intention to do harm, and therefore he could not be held liable for an assault. The trial judge in each case rejected the defendant's contention and in substance instructed the jury that if, notwithstanding the defendant's present inability to do harm in the one case, and notwithstanding the defendant's disclaimer of a present intent to do harm in the other case, the complainant nevertheless had a well grounded and reasonable belief that he was in immediate danger of personal injury at the hands of the defendant, a verdict that an assault had been committed should be returned. In each case the conduct of the defendant was menacing by objective standards. In each case it was left to the jury to determine if, as the result of the menacing conduct, fear of immediate bodily harm was reasonably engendered in the victim. In the civil case fear, or at least apprehension,[7] was essential to recovery whether the threat was conditional or absolute. In the criminal case the court held that in the circumstances it was relevant that the objectively menacing conduct of the defendant, despite an actual inability to do harm, produced the fear of harm which it was intended to produce, with the same consequential tendency to provoke a breach of the peace as if he had the actual ability to do harm. "It is the outward demonstration that constitutes the mischief which is punished as a breach of the peace." *Commonwealth* v. *White,* 110 Mass. 407, 409. In this context, the cited cases do not support the proposition for which the defendant argues. Far from suggesting that fear on the part of the victim must be proved in order to support a conviction of assault under the common law, *Commonwealth* v. *White,* in the opinion of contemporary authorities, establishes an additional category of criminal

---

[7] Restatement: Torts, §§ 23–24.

assault which is separate and distinct from, but not in substitution for, the basis originally provided by the common law.[8]

We have discussed the cited cases to show that they do not, as argued, alter the common law conception that fear on the part of the victim need not be proved in the crime of assault. The language of the cited cases has no application to the case before us. There could be no doubt that Slaney was able to inflict bodily harm, and that he indicated a present purpose to do it by his unequivocal words and conduct.

We conclude our consideration of the first grouping of assignments of error with these observations: The ruling of the judge on the request relating to the element of fear, although harmless in the particular case, was erroneous, and is inherently harmful to the interests of the Commonwealth. His special finding that the victims were in a state of apprehension, although warranted, was not necessary to his conclusion of guilt. His ruling that the defendant was not entitled to a finding of not guilty was manifestly correct.

2. No error is shown in the judge's orders and rulings during the protracted examination of Mrs. Bowen by the defendant's counsel concerning her relations with the defendant. (a) She was asked if she had been at any motel with him during the month preceding the trial. Upon being cautioned by the judge that she was not required to answer any question which might incriminate her, the witness declined to answer. To the judge's implied ruling that the witness was not required to answer, the defendant's counsel excepted on the patently untenable ground that by voluntarily taking the stand she "no longer . . . [had] any constitutional rights." The defendant complains that the unsolicited interposition of the judge was improper. We do not agree. Although a judge may not be required by a party to advise a witness of his privilege against self in-

---

[8] Perkins on Criminal Law (1957) 86–88, 93 footnote 84. See A. L. I., Model Penal Code, § 211.1 (Proposed Official Draft, May 4, 1962) especially alternate subsection (1) (c).

crimination, *Commonwealth* v. *Howe,* 13 Gray, 26, 31, *Commonwealth* v. *Shaw,* 4 Cush. 593, 594, we think it is clearly within his discretion (and often a commendable practice) to advise a witness, sua sponte, of the privilege where he perceives "from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer." *Commonwealth* v. *Joyce,* 326 Mass. 751, 755.

(b) We also think that the argument of the defendant, which was not stated as an objection at the trial and is argued before us for the first time, that Mrs. Bowen had waived the privilege because of partial disclosure not only is made too late, *Kagan* v. *Levenson,* 334 Mass. 100, 107, but is, as we review the record, without substantial merit.

(c) There was no error in excluding the question as to what Mrs. Bowen thought of the defendant in September of this year (the month in which he was indicted and arraigned). Whether the question was objectionable as to form or as to relevancy, was for the judge to decide. *Commonwealth* v. *Greenberg,* 339 Mass. 557, 580–581, and cases cited.

3. The requests for rulings to the effect that neither the assault nor the assault and battery could have happened in the manner described by the victims, and that on the testimony of the ballistics expert the court must find for the defendant, present no questions of law. In substance they were requests for findings of fact which the judge was not required to pass upon. No valid ground of exception lies to the denial of them. It was for the judge to decide on conflicting evidence what took place. It is his function and not ours to weigh the evidence. *Commonwealth* v. *Cooper,* 264 Mass. 368, 373. It is plain that the evidence warranted the finding.

4. The motion for a new trial was addressed to the discretion of the judge. No abuse of discretion has been shown and no error of law appears in the denial of the motion. *Commonwealth* v. *Kavalauskas,* 317 Mass. 453, 460.

*Judgments affirmed.*