PEOPLE v DAVIS
PEOPLE v PEREZ

Docket Nos. 272547 and 272548. Submitted January 8, 2008, at Lansing.
    Decided January 29, 2008, at 9:00 a.m. Leave to appeal sought.

Keith B. Davis and Gilberto E. Perez were convicted in the Kent
    Circuit Court of assault with intent to rob while armed, MCL
    750.89, after the two attempted to rob a liquor store. Perez had
    given the storeowner a note stating that he would kill her if she did
    not give him the money and pointed his pocket at her as though he
    were armed, but did not show her a gun. The court, Dennis C.
    Kolenda, J., sentenced Davis to 5 to 20 years' imprisonment and
    Perez, as a fourth-offense habitual offender, to 10 to 30 years'
    imprisonment. The defendants appealed, and the Court of Appeals
    consolidated their appeals.

    The Court of Appeals *held*:

    1. The fact that Davis was represented at sentencing by a
    different attorney from the one who represented him at trial is not
    itself a ground for resentencing, and the record indicates that
    Davis did not object to the substitute attorney's representation
    and that the substitute attorney was familiar with Davis, his file,
    and the sentencing issues he faced.

    2. The court properly scored 15 points for offense variable 10,
    which is appropriate if the offense involves predatory conduct,
    given that the evidence indicated that Davis had selected the
    particular store to rob because it was tended by a lone woman.

    3. Davis's claim that he should be resentenced on the ground
    that the trial court failed to consider whether he could afford to
    reimburse the county for his attorney fees before ordering reim-
    bursement is without merit, because the trial court specifically
    addressed this issue without objection from Davis.

    4. There was sufficient evidence to support Perez's conviction
    of assault with intent to rob while armed. The storeowner testified
    that she thought that Perez had a gun, Perez behaved as though he
    were armed, and the jury, having viewed the surveillance video-
    tape, was in the best position to judge the witnesses' credibility.

5. The trial court properly instructed the jury regarding the element of assault by explaining that an assault means to engage in threatening conduct that is designed to put another person in fear of being hurt, that the victim's subjective experience of fear was not as important as Perez's intent to scare the victim and whether an ordinary person would have reasonably perceived a threat, and that if Perez's threats were so unpersuasive and ridiculous that no reasonable person would have believed them they should not convict Perez.

6. The trial court did not err by failing to instruct the jury on the crime of attempted assault with intent to rob, because while the facts might have supported a charge of attempted robbery, the facts did not suggest that an attempted assault had occurred.

7. Perez failed to demonstrate prejudice from the trial court's decision to review only the substance of the verdict form, rather than the actual form itself, with defense counsel before showing it to the jury.

8. Defense counsel's decision to argue that the jury should convict, if at all, only for attempted assault with intent to rob does not constitute ineffective assistance of counsel.

Affirmed.

CRIMINAL LAW — ASSAULT WITH INTENT TO ROB WHILE ARMED — JURY INSTRUCTIONS — APPREHENSION.

Jury instructions for the crime of assault with intent to rob while armed should indicate that a victim's subjective experience of fear is not an element of assault, even where the assault is based on apprehension rather than an attempted battery; rather, the prosecution must establish that the defendant engaged in conduct that was designed to put the victim in apprehension of an immediate battery (MCL 750.89).

*Bennett Law Office* (by *P. E. Bennett*) for Keith Davis.

*Neil J. Leithauser* for Gilberto Perez.

Before: KELLY, P.J., and CAVANAGH and O'CONNELL, JJ.

O'CONNELL, J. Defendants Keith B. Davis and Gilberto E. Perez appeal as of right their convictions for assault with intent to rob while armed, MCL 750.89. The trial court sentenced Davis to 5 to 20 years' imprisonment and

sentenced Perez as an habitual offender, fourth offense, MCL 769.12, to 10 to 30 years' imprisonment. We affirm.

The defendants' convictions stem from an incident in which Davis and Perez were foiled in their efforts to rob a liquor store. The store's owner testified that at about 12:45 a.m. on a night in mid-January 2006 she saw Davis enter her store through the back door and suspiciously mill around before approaching the front of the store and asking about the price of a small bottle of rum. Davis's mannerisms tipped off the 30-year liquor-store veteran that something was amiss. The owner spotted Perez lurking outside the rear entrance and watching her, but when Perez saw that he had caught the owner's attention, he stepped away from the building and retreated down the back stairs. Soon afterward, Davis left without buying anything. Having experienced several robberies before, the storeowner picked up the phone and placed it near her.

Within a few minutes, Perez came through the back door, wearing sunglasses and a hat. The storeowner immediately dialed 911, and Perez approached the front of the store with his hand in his coat pocket and put a note on the counter. Remaining on the phone, the owner did not read the note, and instead asked Perez why he was wearing sunglasses. At this, Perez, whose behavior insinuated the threat of a concealed handgun, demanded, "Give me the money, or I'll kill you." In return, the owner demanded to see Perez's firearm or leave, and a standoff ensued until the storeowner's fiancé providently arrived. Perez pointed his pocket at the fiancé and again demanded compliance with his orders, but when Perez groped for a beer bottle and then the cash register with his free hand, the recalcitrant storeowner snatched up a nearby flashlight and

smacked his hand with it. During the argument that ensued, the storeowner's fiancé slipped away, only to return soon afterward with a large shovel. He hit Perez in the back and then tackled Perez. Another man arrived at the store and helped restrain Perez. The storeowner immediately went looking for Davis, and when she found him she identified him to a police officer, who promptly arrested him.

Davis told the police that he had known Perez for about a year, and that they went to the store together to purchase alcohol. Davis explained that he did not have any identification, so he gave Perez four dollars to purchase the alcohol. Davis claimed that he did not know Perez planned on robbing the store. Davis also denied going inside the store. Perez had only 20 cents on him at the time of his arrest, and he was unarmed. However, the note that he had handed the storeowner reiterated his earlier threat, "Give me the money, or I'll kill you." At trial, the surveillance videotape from the store was admitted into evidence, and it showed Perez entering the store, placing the note on the counter, keeping his hand in his pocket, and demanding money.

Davis argues that he should be resentenced because his trial counsel did not appear at sentencing. Davis did not waive trial counsel's representation on the record, and he did not openly consent to being represented by substitute counsel. However, nothing in the record suggests that the attorney who represented him at sentencing was specially appointed for the purpose by the trial court, as in *People v Evans*, 156 Mich App 68; 401 NW2d 312 (1986). Instead, the record suggests that "substitute" counsel fully represented defendant as an attorney who was associated with his trial counsel and who came from his trial counsel's law office. A criminal defendant does not have "an absolute right to be

represented at sentencing by the lawyer who represented him at trial." *Id.* at 70. At Davis's sentencing, the "substitute" counsel was introduced as Davis's attorney without any objection from him, and the attorney elaborated that she was standing in on the trial attorney's behalf. She demonstrated a familiarity with Davis, his file, and the sentencing issues he faced, and when Davis was provided with an opportunity to speak, he only expressed a desire to apologize to the victim. Without any indication that Davis opposed the representation at the time of sentencing and absent any other facts that would suggest that manifest injustice arose from the substitution of counsel, adopting defendant's argument would be tantamount to recognizing an absolute right to representation by trial counsel at sentencing. We have already rejected this proposition. *Id.* Therefore, Davis fails to persuade us that we should vacate his sentence merely because he was represented at sentencing by an attorney who did not represent him at trial.

Davis next challenges the trial court's scoring of offense variable (OV) 10 at 15 points, arguing that the trial court committed clear error by entering the score because no evidence supported it. We disagree. According to MCL 777.40(1), a score of 15 points for OV 10 is appropriate if the offense involves predatory conduct, which is defined in MCL 777.40(3)(a) as "preoffense conduct directed at a victim for the primary purpose of victimization." Unlike the other categories in OV 10, a 15-point score applies when a defendant takes measures to determine the suitability and vulnerability of a particular victim before executing the crime. See *People v Witherspoon*, 257 Mich App 329, 335-336; 670 NW2d 434 (2003). In this case, the evidence suggested that Davis "cased" the store, and found that the storeowner, a lone woman, made a suitable victim for the robbery

scheme hatched by him and Perez. Davis's gross miscalculation of his adversary's capabilities in thwarting Perez does not dilute the egregiousness of Davis's actions or lower his score. See MCL 777.40(1). In short, there was no clear error because the record adequately supported the trial court's score. See *People v Elliott*, 215 Mich App 259, 260; 544 NW2d 748 (1996).

Davis also argues that resentencing is in order because the trial court failed to consider whether he could afford to reimburse the county for his attorney fees before ordering reimbursement. See *People v Dunbar*, 264 Mich App 240, 251; 690 NW2d 476 (2004). We disagree. However, the trial court specifically addressed, without objection, defendant's ability to pay these and other costs, so defendant's arguments regarding defects in the trial court's reimbursement order are groundless. *Id.* at 255. Furthermore, we reject Davis's arguments that his counsel acted ineffectively by failing to raise these sentencing issues, or that the trial court abused its discretion by denying his request for an evidentiary hearing to explore them more fully. The record simply does not reflect any error attributable to Davis's counsel or the trial court, and we agree with the trial court that Davis failed to demonstrate how further factual inquiry would have materially affected the issues.

Turning to Perez's arguments, the crux of his appeal is that the evidence clearly demonstrated that the storeowner never believed that he was actually armed with a firearm and did not fear that he could carry out his death threats. From this basic proposition, defendant extrapolates several errors in the trial proceedings, including the prosecutor's failure to present sufficient evidence that he assaulted the storeowner, the trial court's instruction to the jury that the storeown-

er's subjective belief was largely irrelevant, and the trial court's failure to provide an instruction about the alternative crime of attempted assault. Because we disagree with the premise of defendant's arguments, we reject each of these claims of error. The issue presented is a legal question regarding the elements of assault with intent to commit armed robbery, so we review it de novo. *People v Keller*, 479 Mich 467, 473-474; 739 NW2d 505 (2007).

During cross-examination of the storeowner, Perez's counsel advanced a theory that the owner knew Perez was not armed, so she never actually feared him or felt threatened by him. During closing argument, Perez's counsel asserted that the evidence did not support a finding that the owner ever believed she was in danger, so if the jury found defendant guilty of anything, it should be an attempt to assault the storeowner. Perez's counsel essentially argued, in accordance with statements extracted from Supreme Court precedent, that the storeowner had to believe, reasonably, that defendant was armed before the jury could find that defendant assaulted her. See *People v Reeves*, 458 Mich 236, 240; 580 NW2d 433 (1998).

Perez first argues that the prosecutor presented insufficient evidence that he assaulted the storeowner, which requires us to vacate his conviction. We disagree. "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748, amended 441 Mich 1201 (1992). In deference to the trial court's findings, "a reviewing court is required to draw

all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Assuming, for the sake of argument, that defendant correctly asserts that fear is a necessary element to the apprehension type of criminal assault, the prosecutor still presented sufficient evidence to justify conviction on the assault charge. The storeowner testified that she thought defendant was armed with a gun, and her fiancé did not physically challenge defendant until after he had retrieved a weapon that might equalize a physical contest between him and an armed man. Perez made every effort to persuade his victims that he had a firearm in his pocket, and he threatened to take their lives if they resisted. These actions supported the application of the statute's language, "being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon," MCL 750.89, and justified the charge of assault with intent to commit armed, rather than unarmed, robbery. *People v Jolly*, 442 Mich 458, 468; 502 NW2d 177 (1993). The jurors had the opportunity to view the surveillance videotape, and they were in the best situation to assess the credibility of the storeowner, her fiancé, and other witnesses. *Nowack, supra*. Contrary to Perez's contention that there was no evidence of an assault, there was ample evidence demonstrating that the victim reasonably apprehended an imminent battery. *Reeves, supra* at 244. Therefore, defendant's evidentiary challenge fails outright.

Perez's arguments regarding the trial court's instructions require a deeper analysis of the crime of assault. At the outset, we note that Perez's challenge to the instructions center on the trial court's description

of the crime of assault, not on its definition of "armed." Because the trial court properly conveyed the statutory prerequisites for being armed, our analysis of the jury instructions is focused on the trial court's description of the crime of assault, not on whether the instructions adequately informed the jury about the "armed" element of the crime.

The statute that defines assault with intent to rob while armed specifically requires an assault, MCL 750.89, and in *People v Johnson*, 407 Mich 196, 210; 284 NW2d 718 (1979), our Supreme Court quoted *People v Sanford*, 402 Mich 460, 479; 265 NW2d 1 (1978), for the proposition that a criminal assault required either an attempted battery or an act that instilled in the victim the reasonable apprehension that he or she was about to be battered. However, the focus of *Sanford*, *supra* at 475-479, was the principle that fear was *not* a mandatory element of a criminal assault. To add support to its conclusion, the Supreme Court in *Sanford* cited an early Court of Appeals case, *People v Syakovich*, 32 Mich App 356, 357; 188 NW2d 642 (1971). In *Syakovich*, the defendant brandished a toy pistol, pointed it at the sales clerk, and took money from the cash register. This Court upheld the trial court's acceptance of the defendant's guilty plea for assault with intent to rob while armed, even though the judge never took evidence that the sales clerk was intimidated or frightened by the toy pistol. *Syakovich*, *supra*. The Court reviewed the statutory language and expressly held, "Under the provisions of MCLA § 750.89 . . . , it is not necessary that the victim of an assault with intent to rob being armed be put in fear." *Id*. When, in *Reeves*, our Supreme Court reiterated the dual aspects of criminal assault announced in *Sanford*, it recast the

definition slightly to focus on the egregiousness of the conduct rather than the happenstance of its effect on the victim. It stated:

> This adjunctive definition not only broadens the concept of criminal assault to include aspects of assault's definition in tort, but also treats that form of assault as a substantive offense with a mental element that is distinct from the attempted-battery form of assault, and is satisfied where an actor engages in some form of threatening conduct *designed* to put another in apprehension of an immediate battery. [*Reeves, supra* at 240-241 (emphasis added).]

However, in the later analysis of the defendant's present ability to commit the threatened battery, the *Reeves* Court simultaneously presented divergent approaches to the issue before us. In a single paragraph it explained that it would not deviate from the theory of criminal assault that primarily addresses the menacing behavior of the defendant "because it appropriately focuses on the imminent danger that is *threatened*, rather than on the 'actual' ability to inflict injury. Therefore, the assault element is *satisfied* where the circumstances indicate that an assailant, by overt conduct, *causes* the victim to reasonably *believe* that he will do what is threatened." *Id.* at 244 (emphasis added). Taking this paragraph at face value, the question presented by the Supreme Court's language is whether criminal assault only requires a reasonably believable threat, or whether it requires the victim's actual honest belief in the validity of the threat.

Taking this paragraph in context, however, greatly simplifies the legal issue. This language did not insert an element of subjective fear into the crime of assault; it stood in direct opposition to it. It reiterated that our caselaw has always maintained that the subjective element of fear simply has no place in a criminal assault

trial apart from an inferential determination of whether a rational person in the victim's shoes would have reasonably believed that the defendant's behavior threatened an immediate battery. In other words, a ridiculous circus gag does not amount to felonious assault merely because a nervous six-year-old really believes that the brightly colored cannon, whose wick is fast disappearing amid a shower of sparks, will imminently launch a clown-shaped cannonball into his lap. Nor does criminal assault lie when a tardy, unarmed, would-be passenger shouts creative threats of bodily harm at a punctual bus driver who has already pulled away from the stop and accelerated well beyond the range and speed of the human sprint.

On the other side of the same coin as this "present ability" requirement is the understanding that "fear on the part of the victim need not be proved in the crime of assault." *Commonwealth v Slaney*, 345 Mass 135, 141; 185 NE2d 919 (1962), cited with approval in *Sanford*, *supra* at 479. In *Slaney*, an assailed woman's intrepid escort frankly testified that he never feared that the defendant, the woman's spurned lover, would actually shoot him with the firearm he openly brandished and pointed at him. *Slaney*, *supra* at 136-137. The court rejected defense counsel's argument that assault did not lie against the defendant because the victim was never actually intimidated by the defendant's show of force. *Id*. at 138. The court reasoned, "The criminal law is designed primarily to preserve the public peace. The imperturbability or fortitude of a victim, or the unawareness of an intended victim, should not afford a defence to the criminal prosecution of the wrongdoer." *Id*. at 138-139. The court explained that "in this Commonwealth neither fear, nor terror nor apprehension of harm is an essential ingredient of the common law crime of assault." *Id*. at 139, quoted with approval in

*Sanford, supra* at 479. In short, a victim's subjective emotional response to a defendant's behavior does not exonerate him any more than it condemns him.[1]

Framed in this light, we reject Perez's challenges to the trial court's instructions. The trial court provided lengthy instructions to the jury, which included the preliminary explanation that "[a]n assault simply means to engage in some form of threatening conduct which is designed to put another person in fear of being hurt, provided you were close enough to carry it out." The court went on to explain that a particular victim's subjective experience of fear was not as important as Perez's intent to scare or intimidate the victim and whether an ordinary person facing the same conduct would reasonably perceive a legitimate threat of harmful contact. The trial court added that if Perez's actions were so unpersuasive and ridiculous that a reasonable person would not have apprehended any real threat of harm from him, then the jury should not convict him of the charge. These instructions properly accounted for the circumstances of the robbery and anything the storeowner or her fiancé may have observed that would have definitely convinced them that Perez's threats were an absolute farce and that he was objectively harmless.[2] In this context, we agree with the trial court

---

[1] Taking yet another admittedly extreme example, a requirement that the victim must actually fear the assailant would mean that a mentally deranged or sanguinely intoxicated individual could never suffer an assault, no matter how threatening or menacing the defendant's conduct. The better course in criminal law is to focus on the culpability of a defendant's behavior and not require victims to cower helplessly in the face of undaunted aggression before providing them, or the public at large, with a just response to cogent threats of violence. *Slaney, supra* at 138-139.

[2] We note that the storeowner testified that she did not see anything in Perez's behavior that revealed the real nature of his fictitious weapon. Although the self-described "stubborn" storeowner demanded to see the

that a victim's subjective experience of the emotion of fear is not an element of assault, even in "apprehension" types of criminal assault cases. See *Syakovich, supra.* Therefore, although somewhat cumbersome in parts, the jury instructions as a whole provided adequate protection of the defendant's rights and fairly presented the issues to the jury. *People v Martin,* 271 Mich App 280, 337-338; 721 NW2d 815 (2006).

Perez next argues that the trial court erred by failing to provide the jury with an instruction for the crime of attempted assault with intent to rob. We disagree. It is not error to refuse to charge on a lesser offense or attempted offense that is not supported by the evidence. See *People v Patskan,* 387 Mich 701, 712-713; 199 NW2d 458 (1972), cited with approval in *People v Cornell,* 466 Mich 335, 355-356; 646 NW2d 127 (2002). Consistent with the holding in *Patskan,* the trial court in the case

---

weapon and told Perez to leave, she also testified that she was quite frightened during the ordeal and that she did not know that Perez's pretended firearm was a fraud. On other occasions, the self-described "stubborn" storeowner had chased away bandits who were armed with real firearms and who shot very real bullets at her. Therefore, the evidence, taken in context, does not prove unequivocally that the gritty storeowner lacked fear or legitimate apprehension of a deadly weapon. Instead, it accentuates the unpredictability of human behavior and the imprudence of standardizing and measuring criminal culpability on the basis of the victim's apparent internal subjective interpretation of a criminal event.

We also note that the evidence definitely placed Perez, at various times, within striking distance of the storeowner, her fiancé, and a second man who helped subdue Perez on the floor. At one point, Perez reached for a bottle on the counter, and, when he grabbed at the cash register, he was close enough to the storeowner to receive a rap on the knuckles from her flashlight. Therefore, Perez was certainly close enough to his victims to accomplish a physical assault, even if he was not armed with a deadly weapon, and the storeowner clearly apprehended Perez's physical proximity and threats to do her harm. A threat does not have to be deadly to constitute an assault, but can include any harmful or offensive contact. See *People v Terry,* 217 Mich App 660, 662-663; 553 NW2d 23 (1996).

at bar found that the facts only suggested that Perez fully performed the acts forming the basis of the assault charge and did not support a finding that his efforts to confront the storeowner were peremptorily thwarted by, say, a locked door or a debilitating fall from the back stairs. Under the circumstances, the trial court correctly ruled that the facts did not suggest an attempted assault but instead only indicated, at most, an attempted robbery. See *Patskan, supra* at 713-714. As stated in *People v Akins*, 259 Mich App 545, 552-553; 675 NW2d 863 (2003), attempted robbery is a necessarily included lesser offense of assault with intent to rob while armed, and the only difference between them is the assault element. Therefore, if the jurors found that Perez's behavior had no reasonable hint of menace or legitimate threat, then the assault element would fail, leaving only Perez's attempt to rob the store. The facts supported this instruction, and it was properly provided. Therefore, we find no merit in Perez's argument that the trial court improperly instructed the jury. Our review of the record likewise contradicts his claims of prejudice regarding the verdict form and the timing of its presentation to the jury. Perez's sole argument is that the trial court should have reviewed the actual form, and not merely its substance, with defense counsel before providing it to the jury. However, he fails to demonstrate how the timing affected his defense when defense counsel knew the substance of the form in advance.

Finally, we reject Perez's allegation of ineffective of assistance of counsel because he fails to persuade us that his trial counsel's actions were anything other than sound trial strategy. See *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). Perez argues that his trial counsel provided ineffective assistance by arguing that the jury should convict, if at

all, only for attempted assault with intent to rob.
Although it is true that defense counsel's tactic was not
as successful as he may have originally anticipated,
Perez had few options open to him in light of the
unassailable evidence against him.[3] The legal position
taken by trial counsel was supported by a fair reading of
precedent, including *Reeves, supra,* so the soundness of
the strategy was not affected by the trial court's deci-
sion to instruct the jury that an objective, rather than
subjective, standard of belief applied. "[W]here the
evidence obviously points to defendant's guilt, it can be
better tactically to admit guilt and assert a defense or to
admit guilt on some charges but maintain innocence on
others." *People v Matuszak,* 263 Mich App 42, 60; 687
NW2d 342 (2004). This is exactly the case before us. We
are further persuaded that defense counsel knew that
the trial court was disinclined to present the attempted
assault option to the jury, and that his arguments to the
jury about attempted assault were a strategic attempt
to force the trial court's hand or win a not-guilty verdict
from a somewhat confused jury panel. We are not
persuaded that either the trial court or defense counsel
mismanaged this matter.

It bears noting that trial counsel's strategy also
advanced the secondary, and legitimate, theory that no
reasonable person would have felt threatened by
Perez's finger-gun pointed pocket, so he could not have
committed an assault. See *Reeves, supra.* Although the
trial attorney's efforts to press attempted assault rather
than attempted robbery were overambitious in hind-
sight, see *People v Stanaway,* 446 Mich 643, 688; 521

---

[3] Remarkably, Perez's appeal reiterates the same factual and legal
arguments that defense counsel presented below, lending credence to the
soundness of trial counsel's strategy in the face of the evidence confront-
ing his client.

NW2d 557 (1994), Perez fails to demonstrate that his counsel's actions were anything short of shrewd. The record amply reflects that Perez's trial attorney was an informed, dedicated, creative, and proficient legal advocate. Perez's objections regarding the jury form and its presentation were adequately preserved, so we reject any claim that his trial counsel prejudiced his legal position on those issues. Under the circumstances, Perez's trial counsel advocated his client's position well and presented as strong a defense as possible, and Perez's arguments to the contrary lack merit.

Affirmed.