*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEONTE MONTEZ LOVE,

        Defendant-Appellant.

UNPUBLISHED
December 10, 2020

No. 350059
Wayne Circuit Court
LC No. 19-001680-01-FH

Before: LETICA, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of assault with a deadly weapon (felonious assault), MCL 750.82, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and assault and battery, MCL 750.81. Defendant was sentenced to three years' probation for the felonious assault conviction concurrent to two years' imprisonment for the felony-firearm conviction, and 90 days' imprisonment for the assault and battery conviction with credit for 125 days served. We affirm.

## I. BACKGROUND

This case arises out of an altercation involving a gun. In February 2019, Tamara Adkins was meeting her daughter, Dymin Carter, at Adkins's mother's house to get the family's children ready for school. Defendant, Carter's former boyfriend, had stayed at the house overnight. Carter was shocked to see defendant at her grandmother's home when she arrived because they broke up in 2017. As Adkins and Carter left the house with their children, defendant followed and asked Carter to give him the keys to her van. The van was broken down outside the house. Carter refused. Defendant then grabbed Carter's purse, leading to a struggle over possession of Carter's purse. Adkins attempted to intervene, blocking defendant by extending her arm between defendant and Carter. Defendant then pulled a gun out of his waistband and pointed it at Adkins. Defendant directed Adkins to back up or he would kill her. Adkins was terrified and wanted to protect her daughter and the children. Adkins backed away, saying: "Are you really pointing this gun at me?"

Adkins's fiancé, Marcus McCray, got out of Adkins's car and went over to defendant, Adkins, and Carter after seeing that defendant had a gun. Adkins warned McCray that defendant had a gun. When defendant saw McCray coming over, defendant put the gun away.

At that point, Adkins, who "was just frantic," ran into the house to call the police. In the interim, Carter had regained sole possession of her purse and handed it to her son, telling him to run inside.

Adkins heard her grandson, screaming, "Don't touch me, don't touch me," and running toward the house. Defendant pursued him and Carter ran after defendant. Adkins retrieved a butcher knife from the kitchen. Carter and defendant were on the porch, and Adkins told defendant not to come into the house or she would kill him while armed with the knife. Although Adkins testified that she had one knife, Carter testified that Adkins had two knives.

The police arrived in response to Adkins's call. An officer approached defendant, who matched the description the 911 caller had provided. Defendant stated that he had a handgun. The officer retrieved a silver Taurus handgun pistol from defendant's waistband. The officer also retrieved an additional magazine from defendant's coat pocket.

Defendant told the officer that he had had a verbal altercation with his ex-girlfriend about a vehicle. According to defendant, his ex-girlfriend's mother arrived, retrieved a knife, and threatened him with it. At that point, defendant "either flashed or pulled out the gun to basically defendant himself." Defendant had a concealed pistol license.

The police officer arrested defendant. And, at trial, the court determined that Adkins and Carter were credible despite the inconsistencies in their versions of the event. Although the court convicted defendant of felonious assault, felony-firearm, and assault as to Adkins, it acquitted defendant of felonious assault, felony-firearm, and domestic violence as to Carter, as well as of assault as to Carter's son.

This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his felonious assault and felony-firearm convictions. We disagree.

## A. STANDARD OF REVIEW

We review de novo a claim that the evidence in a bench trial was insufficient. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). "The evidence is viewed in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at 474. This Court may only set aside a trial court's findings of fact in a bench trial when clearly erroneous. *Id*. at 473. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. "Witness credibility is for the trier of fact—the trial judge, in a bench trial—to decide." *People v Ratcliff*, 299 Mich App 625, 628; 831 NW2d 474 (2013), judgment vacated in part on another ground 495

Mich 876; 838 NW2d 687 (2013).  This Court defers to the trial court's credibility determinations as it has the opportunity to hear and observe the witnesses testify.  *People v St. Cyr*, 113 Mich App 213, 222; 317NW2d 857 (1982); MCR 2.613(C).

## B.  ANALYSIS

Sufficient evidence was presented to support defendant's felony convictions.[1]

The trial court found defendant guilty of felonious assault with Adkins as the victim.  "[A] person who assaults another person with a gun, revolver, pistol, . . . or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of" felonious assault.  MCL 750.82(1).  Felonious assault occurs when a defendant commits "(1) an assault, (2) with a dangerous weapon, . . . (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery."  *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).  Felonious assault is a simple assault that is aggravated by the use of a weapon.  *People v Jones*, 443 Mich 88, 100; 504 NW2d 158 (1993).  "An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery."  *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005).

Defendant first argues that there was insufficient evidence to establish his intent to injure Adkins or place her in reasonable apprehension of an immediate battery.  "Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent."  *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019).  "Intent is a mental attitude made known by acts."  *People v Strong*, 143 Mich App 442, 452; 372 NW2d 335 (1985).  Intent may be disclosed by a defendant's "declarations or by his actions . . . ."  *Id*.  Defendant contends that, because Carter and Adkins inconsistently testified about who was in front of the other, and because Adkins testified that she blocked defendant with her arm when she tried to intervene, it was not clear that defendant pointed the gun at Adkins rather than Carter.  Defendant, however, specifically threatened to shoot Adkins if she did not move back after she tried to intervene in defendant's struggle with Carter over Carter's purse.  Both women testified consistently that the gun was pointed at Adkins.  Adkins testified that she was terrified after the defendant pointed a gun at her and threatened to kill her.  Viewed in a light most favorable to the prosecution, defendant's statements and conduct support the inference that defendant intended to cause a reasonable apprehension of an immediate battery to Adkins.

Next, defendant argues that there was insufficient evidence that Adkins actually feared an immediate battery as required to show assault.  But the victim's subjective fear is not a mandatory element of criminal assault.  *People v Davis*, 277 Mich App 676, 684-686; 747 NW2d 555 (2008), vacated in part on another ground 482 Mich 978; 755 NW2d 186 (2008).  Instead, an assault is "either an attempt to commit a battery or an unlawful act that causes apprehension of a battery."  See *Starks*, 473 Mich at 234.  Thus, the prosecution need only present evidence from which the jury could determine beyond a reasonable doubt that the defendant engaged in behavior designed to place the victim in apprehension of an immediate battery.  *Davis*, 277 Mich App at 684-686.  It

---

[1] Defendant does not challenge the sufficiency of the evidence as to his misdemeanor conviction.

is reasonable for a person to fear an immediate battery when a gun is pointed in her direction. See *Avant*, 235 Mich App at 506. In this case, defendant not only pointed the gun at Adkins, but also simultaneously threatened to kill her if she did not move back. Adkins testified that she felt "terrified" after defendant pointed the gun at her, and the trier of fact could, and did, infer that Adkins was afraid defendant would cause her immediate injury by shooting her with the weapon he had pointed at her.

Defendant further argues that Adkins was not afraid of an immediate battery because she walked away from him and went back into the house and also went back onto the porch several times before the police arrived. For the reasons just discussed, defendant's arguments fail. Moreover, Adkins testified that she *ran* to the house to call the police, which would support a conclusion that she was afraid defendant would use his gun. Second, the fact that a victim was no longer afraid *after* an assault occurred does not necessarily mean that the victim was not placed in fear *during* the assault. *Id*. In this case, Adkins came out of the house and told defendant that, if he entered the house, she would kill him. At that point, Adkins had armed herself with at least one knife. In addition, Carter testified that defendant put the gun away when McCray got out of the car and approached defendant, which was when Adkins ran to the house. Adkins's response after defendant put the gun away is irrelevant to the issue of whether she was placed in reasonable apprehension of an immediate battery when defendant had the gun out and pointed at her. Likewise, Adkins's returning to the porch "a couple of times" does not negate the evidence that she was terrified when defendant pointed the gun at her. Rather, viewing the evidence in the light most favorable to the prosecution, the trial court did not clearly err by finding that defendant assaulted Adkins because a rational trier of fact could find that Adkins apprehended an immediate battery when defendant pointed a gun at her and threatened to kill her.[2]

Finally, there was also sufficient evidence to convict defendant of felony-firearm. "A person who carries or has in his . . . possession a firearm when he . . . commits or attempts to commit a felony . . . is guilty of" felony-firearm. MCL 750.227b(1). As already mentioned, felonious assault is a felony. MCL 750.82(1). The trial court properly convicted defendant of felony-firearm after it concluded that defendant possessed a firearm when he committed the felonious assault against Adkins.

Affirmed.

/s/ Anica Letica
/s/ Michael J. Riordan
/s/ Thomas C. Cameron

---

[2] Defendant does not dispute that a gun was used to commit the felonious assault.