*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
June 24, 2021

v

No. 352607
Oakland Circuit Court
LC No. 2019-271592-FH

CYNTHIA DENISE HARRIS, also known as
CYNITHIA DENISE HARRIS,

      Defendant-Appellant.

Before: GLEICHER, P.J., and CAVANAGH and LETICA, JJ.

PER CURIAM.

A jury convicted Cynthia Harris of felonious assault, MCL 750.82, for threatening and cutting her niece with a kitchen knife during an argument. Harris admitted that she brandished a knife, intending to frighten her niece and her niece's boyfriend, but justified doing so based on the victims' alleged burglary of her home. On appeal, Harris claims that her trial attorney should have impeached the boyfriend's credibility with evidence of his past criminal convictions and that the prosecution violated her due process rights by failing to disclose those convictions prior to trial. She also challenges the admission of her niece's preliminary examination testimony at trial in lieu of live testimony. We discern no prejudicial error and affirm.

## I. BACKGROUND

On June 16, 2019, Jaida Gills planned to meet a new boyfriend, Jeffrey Leseure, at the home of her aunt, Harris. The trio smoked marijuana and then Leseure drove them to the movies. About halfway through the movie, Gills and Leseure left the theater. This is where the parties' stories diverge.

Gills and Leseure claimed that they sat in the lobby for a brief period and then drove to a gas station to purchase cigarettes and alcohol. When they returned, Harris was waiting in the parking lot and was upset that Gills and Leseure had left her. The trio went to Harris's house where they ate, smoked marijuana, and drank alcohol. Gills and Leseure described that Harris suddenly accused them of stealing her purse. Gills implied that Harris was mentally ill and was often paranoid that people stole her belongings. Harris picked up a knife from the kitchen counter

-1-

and swung it at Gills and Leseure. She also banged the knife against the refrigerator near Gills's head. Gills was trapped in a corner and reached out her hands to try to take the knife or to calm Harris. Harris slashed Gills's hand with the knife as she swung it through the air.

Gills and Leseure described leaving Harris's home. Gills called a friend, who in turn called 911. As Gills exited the home, she left a trail of blood. Blood fell on a pair of white Fila tennis shoes on Harris's front porch. Leseure went outside and found Harris's purse in the backseat of his car. He returned to the home with the purse and brought in the bloody tennis shoes. No one wanted the police involved and the group planned to tell authorities that Gills cut her hand while cooking. They left the home together and got into Leseure's vehicle to head to the hospital. But the police arrived before they could drive away.

Harris, on the other hand, claimed that she did not bring her purse to the movies, only her house keys, which she left in the car while she was inside the theater. Harris opined that Gills and Leseure left the movies to return to her house to rob her. Gills and Leseure stole her purse, new tennis shoes, a bracelet, and other items, Harris asserted. Harris's mother, Gills's grandmother, testified and corroborated that Gills stole Harris's Pandora bracelet and tried to give it as a gift to her grandmother. Harris testified that she grabbed the kitchen knife for protection when she realized her purse was missing. She felt unsafe because she claimed that Gills was a drug addict who had stolen from her before. Harris admitted to banging the knife against the refrigerator or counter and swinging it through the air, accidentally slashing Gills's hand. Harris challenged Leseure's testimony that he "found" Harris's purse in his car. As Harris had not brought her purse to the movies, either Leseure or Gills must have taken the purse and put it in the car.

Gills testified at Harris's preliminary examination but could not be located to testify at trial. Accordingly, the court permitted the prosecution to read her earlier testimony into the record for the jury's consideration. The jury credited the testimonies of Gills and Leseure over Harris and convicted her of felonious assault.

## II. ANALYSIS

Harris's arguments for a new trial all fail for essentially the same reason: there is simply no meaningful possibility that the errors she raises could have changed the outcome of her trial. "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). The "present ability or apparent present ability to commit a battery" is also required. *People v Grant*, 211 Mich App 200, 202; 535 NW2d 581 (1995). An assault can be committed by means of "an act that would cause a reasonable person to fear or apprehend an immediate battery." M Crim JI 17.1(2); see also *People v Davis*, 277 Mich App 676, 684-688; 747 NW2d 555 (2008), vacated in part on other grounds 482 Mich 978 (2008) (explaining that subjective fear in the victim is not required).

At trial, Harris testified that when she picked up the knife, she was thinking "please, let me scare them to put my stuff back." She described swinging the large kitchen knife and banging the knife repeatedly. Harris testified that she was very angry and swore at Leseure and Gills, demanding her purse while holding the knife. Harris agreed that her actions took place in a confined space with little room to maneuver. When asked if her behavior would cause a person to

be frightened, Harris responded "I would hope so." Harris thereby admitted to the elements of felonious assault on the witness stand.

## A. LESEURE'S PRIOR CONVICTIONS

Despite admitting the facts necessary to support her conviction, Harris argues that her appointed trial counsel ineffectively failed to investigate and impeach Leseure with evidence of his prior convictions. She also contends that the prosecution denied her right to due process and violated the principle of *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194, 1196; 10 L Ed 2d 215 (1963), by failing to disclose Leseure's prior convictions during discovery.

Harris filed a motion in this Court to remand for an evidentiary hearing to further develop these claims. This Court denied that motion without prejudice. *People v Harris*, unpublished order of the Court of Appeals, entered November 17, 2020 (Docket No. 350648). A hearing remains unnecessary as defendant's challenges can be adequately reviewed on the existing record.

To support a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish that counsel's performance was deficient, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). To establish prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have differed. *Id*. at 663-664. However, "[e]ffective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Traver*, 328 Mich App 418, 422; 937 NW2d 398 (2019) (cleaned up).

To establish a *Brady* violation, a defendant must show that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). Evidence that could be used for impeachment only may qualify as "favorable to the accused." *Id*. at 150. And evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. (cleaned up). "The question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. at 150-151 (cleaned up).

Harris has presented evidence on appeal that Leseure pleaded guilty to two counts of receiving and concealing stolen property valued between $200 and $1000, in violation of MCL 750.535(4)(a). The underlying acts occurred on September 8, 2019, three months after the events in this case. Leseure was sentenced to probation for these misdemeanor convictions.

MRE 609(a) provides for the admission of impeachment evidence as follows:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross examination, and

> (1) the crime contained an element of dishonesty or false statement or
>
> (2) the crime contained an element of theft, and
>
>> (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted . . . .

Leseure's misdemeanor theft convictions were not "punishable by imprisonment in excess of one year." MRE 609(a)(2)(A). Accordingly, they would only be admissible for impeachment purposes if "the crime contained an element of dishonesty or false statement." MRE 609(a)(1).

In *People v Parcha*, 227 Mich App 236, 242; 575 NW2d 316 (1997), this Court noted, "The view has been expressed that all crimes involving theft necessarily involve dishonesty." However, the Michigan Supreme Court rejected that view by specifically treating theft offenses separately from offenses involving dishonesty and false statements when amending MRE 609. *Parcha*, 227 Mich App at 242, citing *People v Allen*, 429 Mich 558, 605; 420 NW2d 499 (1988). Under Michigan law, "theft offenses, as a rule, are not so reflective of one's truthfulness as to warrant automatic admission into evidence of evidence of a prior conviction of such an offense." *Parcha*, 227 Mich App at 243. A theft offense is only admissible as an offense with an element of dishonesty or false statement if the offense does "not merely imply dishonesty on the part of the perpetrator, but incorporated a dishonest act, such as active deceit or falsification, as an element of the offense itself." *Id*. Whether a theft offense "is admissible pursuant to MRE 609(a)(1) turns on the specific factual underpinning of the conviction." *Parcha*, 227 Mich App at 247.

> The elements of receiving and concealing stolen property are: (1) that the property was stolen; (2) the value of the property; (3) the receiving, possession or concealment of such property by the defendant with the knowledge of the defendant that the property had been stolen; (4) the identity of the property as being that previously stolen; and (5) the guilty constructive or actual knowledge of the defendant that the property received or concealed had been stolen. [*People v Matuja*, 77 Mich App 291, 295; 258 NW2d 79 (1977).]

The elements of this offense suggest that a defendant could commit the crime by an actual "dishonest act, such as active deceit or falsification." But there is no binding precedent declaring the offense to be definitively either a crime of theft or a crime of dishonesty. Indeed, Justice MARKMAN dissented from the Supreme Court's denial of leave to appeal to consider this very issue in *People v Ferrier*, 463 Mich 1007, 1007; 624 NW2d 736 (2001).

Harris was required to establish the factual predicate for her ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Beyond the fact of Leseure's convictions, Harris made no attempt to describe the facts surrounding his offenses. Without any information regarding the "specific factual underpinning of the conviction[s]," neither the trial court nor this Court could determine whether Leseure's prior convictions would be admissible to impeach his testimony as offenses involving elements of dishonesty or false statement. We cannot fault trial counsel for failing to seek admission of this evidence when it appears likely to be inadmissible. See *People v Ericksen*, 288 Mich App 192, 205; 793 NW2d 120 (2010) (holding that failing to "raise a futile objection does not constitute ineffective assistance of counsel").

-4-

Harris also cannot establish the necessary prejudice to warrant relief. Even had trial counsel introduced evidence of his prior convictions to impeach Leseure, it is unlikely that the trial would have ended differently. Harris personally established that she committed the offense of felonious assault through her own testimony. The disagreements between Harris, Gills and Leseure were peripheral as compared to the descriptions of the actual assault. Harris does not contend that she would have abstained from testifying had she been able to impeach Leseure. And her testimony was the nail in the coffin.

We similarly cannot find that the prosecution violated Harris's constitutional rights by withholding the fact of these convictions. Although impeachment evidence can be characterized as favorable evidence for *Brady* purposes, it was never clear that Leseure's convictions met MRE 609's admissibility requirements. The favorability of the information was therefore uncertain. And as previously discussed, the absence of the information did not likely impact the outcome of Harris's trial. Accordingly, Harris cannot establish entitlement to a new trial.

## B. GILLS'S PRELIMINARY EXAMINATION TESTIMONY

Harris further contends that the court violated her right to confront the witnesses against her by permitting the prosecution to present Gills's preliminary examination testimony in lieu of live testimony. Harris complains that her counsel did not adequately cross-examine Gills at the preliminary examination, leaving her testimony wanting for trial purposes. Harris further urges that it was essential for the jury to observe Gills's demeanor during her testimony in order to judge her credibility.

"The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004), quoting US Const, Am VI; see also Const 1963, art 1, § 20. "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008) (cleaned up). "The United States Supreme Court has held that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact, but has also held that the face-to-face confrontation requirement is not absolute[.]" *People v Buie*, 491 Mich 294, 304; 817 NW2d 33 (2012) (cleaned up). The Confrontation Clause bars the admission of testimonial hearsay in the absence of two key elements: "unavailability and a prior opportunity for cross-examination." *Crawford*, 541 US at 68.

Harris does not challenge Gills's unavailability, implicitly accepting the sufficiency of the efforts made by the government to produce Gills at trial. She also does not challenge the trial court's application of MRE 804(b)(1), the rule governing admission of former testimony. Instead, Harris argues that her prior opportunity to cross-examine Gills at the preliminary examination was insufficient. She emphasizes that the jury could not observe Gills's demeanor. Harris elaborates that counsel was unable to cross-examine Gills on the basis of medical reports and a dashboard camera video turned over to the defense after the preliminary examination.

" 'The Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the

defense might wish.' " *People v Garay*, 320 Mich App 29, 39; 903 NW2d 883 (2017), judgment rev'd in part, vacated in part on other grounds 506 Mich 936 (2020), quoting *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988). And it is well-established that sometimes the right to have the jury observe the demeanor of the witness must give way. The only real question for appeal is whether the discovery of further evidence after the preliminary examination negated the "opportunity" for cross-examination.

Harris argues that her counsel could have more deeply examined Gills with the statements she made to police that can be heard in the dash-cam footage and with statements in the medical records that Gills "smell[ed] heavily of marijuana." But counsel did cross-examine Gills at the preliminary examination at some length. Among other things, counsel elicited testimony about Gills's use of marijuana and alcohol on the day of the altercation, and clarified that Harris did not "stab" Gills. Moreover, at trial, officers testified regarding their interaction with the witnesses at the scene. And further evidence was presented that Gills consumed alcohol and used marijuana on the night in question. The information helpful to Harris reached the jury and the jurors could use that information to assess the veracity of Gills's preliminary examination testimony. Harris again cannot establish any error, let alone error warranting a new trial.

## C. CUMULATIVE ERROR

Finally, Harris argues that the cumulative effect of the alleged errors deprived her of a fair trial and due process, necessitating reversal. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). However, when there are no actual errors, there can be no cumulative error. *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995); *Dobek*, 274 Mich App at 106.

Harris has not established any single error that occurred during her trial, let alone a grouping of errors that could be aggregated to find prejudice. And given Harris's admission to facts supporting the elements of her felonious assault conviction, any potential errors she could have established would not have undermined our confidence in the reliability of the jury's verdict.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Anica Letica