## COMMONWEALTH vs. JASON CHAMBERS.

No. 00-P-1816.

Suffolk. September 20, 2002. - January 9, 2003.

Present: RAPOZA, KASS, & MILLS, JJ.

*Assault by Means of a Dangerous Weapon. Practice, Criminal,* Required finding, Instructions to jury.

This court concluded that, in a prosecution for assault by means of a dangerous weapon in violation of G. L. c. 265, § 15B(*b*), on a theory of threatened battery, the Commonwealth must prove that the victim was aware of the threatened battery [48-52]; where, at the trial of indictments charging the defendant with four counts of assault by means of a dangerous weapon, two of the occupants of the automobile into which the defendant drove his vehicle did not have a sense of an imminent collision, the defendant was entitled to a required finding of not guilty as to the counts alleging an assault on those two occupants [52-53].

At the trial of indictments alleging assault by means of a dangerous weapon, the judge's incorrect illustrations of attempted battery did not give rise to a miscarriage of justice, where the examples correctly illustrated another charge before the jury, and where, given the uncontested evidence that the defendant intentionally drove his motor vehicle into another automobile, there was no concern that the jury would somehow have found an attempted battery on the basis of a diminished standard. [53]

INDICTMENTS found and returned in the Superior Court Department on March 18, 1999.

The cases were tried before *James D. McDaniel, Jr.,* J.

*Mark W. Helwig* for the defendant.

*Joseph M. Ditkoff,* Assistant District Attorney (*Joshua I. Wall,* Assistant District Attorney, with him) for the Commonwealth.

KASS, J. On the basis of the evidence most favorable to the Commonwealth, the jury were warranted in finding that Jason Chambers, in jealous rage, aimed and drove his automobile into one in which his former lover was a passenger, and which was owned and driven by her new paramour. For that expression of

wrath, a Superior Court jury convicted Chambers of four counts of assault by means of a dangerous weapon, an automobile. G. L. c. 265, § 15B(*b*).[1]

The crime of assault breaks down into two subcategories: an attempted battery (e.g., intentionally swinging at a person with a baseball bat and missing) or a threatened battery (e.g., waving a bat toward a person in an overt and objectively menacing way). See *Commonwealth* v. *Gorassi*, 432 Mass. 244, 247-248 (2000); *Commonwealth* v. *Melton*, 436 Mass. 291, 294 (2002); *Commonwealth* v. *Musgrave*, 38 Mass. App. Ct. 519, 521 (1995), *S.C.*, 421 Mass. 610 (1996). The defendant Chambers's claim on appeal is that while there was evidence of *attempted* battery, there was insufficient evidence of *threatened* battery. As the case went to the jury on a general verdict, the defense argues there is no way to know whether the jury arrived at a verdict on a version of the crime that the evidence supported. In this respect, the aspect of the case on appeal resembles *Commonwealth* v. *Purrier*, 54 Mass. App. Ct. 397, 397-398 (2002). The issue was preserved by the defense by timely motions for required findings of not guilty. See *Commonwealth* v. *Fickett*, 403 Mass. 194, 197 (1988).

1. *Elements of threatened battery.* The defense acknowledges that there was evidence sufficient to prove an attempted battery: an overt step toward making intended physical contact (touching) to which the target has not consented and coming pretty near to accomplishing the crime. *Commonwealth* v. *Richards*, 363 Mass. 299, 303 (1973). *Commonwealth* v. *Melton*, 436 Mass. at 295. *Commonwealth* v. *Musgrave*, 38 Mass. App. Ct. at 520-521 & n.3. *Commonwealth* v. *Purrier*, 54 Mass. App. Ct. at 401. In the case of an attempted battery, the victim need not be aware of the hostile act. *Commonwealth* v. *Slaney*, 345 Mass. 135, 138-139 (1962). *Commonwealth* v. *Richards, supra. Commonwealth* v. *Gorassi*, 432 Mass. at 248.

---

[1]There were six indictments laid against Chambers: 1) armed assault with intent to murder, of which the jury acquitted him; 2) assault and battery by means of a dangerous weapon (knife), as to which the jury also acquitted him; and 3) four counts of assault and battery by means of a dangerous weapon (automobile). As to those last indictments, the trial judge directed a required finding of not guilty as to battery, leaving as the residual charge: assault with a dangerous weapon, an automobile.

Threatened battery requires proof that the defendant has engaged in objectively menacing conduct with the intent of causing apprehension of immediate bodily harm on the part of the target. *Commonwealth* v. *Gorassi, supra* at 248. *Commonwealth* v. *Musgrave*, 38 Mass. at 524. "Objectively menacing" conduct means that the target reasonably would feel immediate menace. The defense urges that the occupants of the car that Chambers struck did not apprehend the attack at all, and, hence, there was no threatened battery. Language in recent threatened battery decisions hints at, but does not squarely answer, whether the object of a threatened battery must be aware of the threatening act. Conduct might be of a kind that objectively would make a reasonable person apprehend imminent bodily injury, but what if that person were unaware of the menace?

One could imagine, for example, our hypothetical bat being waved menacingly behind the back of the object of menace, with only a percipient bystander to tell the tale. In *Commonwealth* v. *Slaney*, 345 Mass. at 138-139, the court remarked, "The criminal law is designed primarily to preserve the public peace. The imperturbability or fortitude of a victim, or the unawareness of an intended victim, should not afford a defense to the criminal prosecution of the wrongdoer. . . . It follows from what we have said that in this Commonwealth neither fear, nor terror nor apprehension of harm is an essential ingredient of the common law crime of assault." Although preceded by a threat to shoot, the *Slaney* case was about an attempted battery kind of assault. The defendant Slaney shot and missed one of two persons who were the objects of his ire. Of the two targets, only one testified and he said — remarkably — "that he was not afraid at any time." *Id.* at 136-137. There is also a reference in the *Slaney* opinion to the alternative form of assault whereby the target of the assault apprehends imminent danger of physical harm. *Id.* at 139-141. That alternative form of criminal assault, in which the target of menace is aware of impending danger, was explicated in *Commonwealth* v. *Richards*, 363 Mass. at 303-304.

There is much appeal to the proposition that a crime against a person is no less a crime because the victim is unaware that the

offense has occurred. The good order of society has been violated, and the offender ought to be punished. As the instant case demonstrates, measuring what is menacing conduct is more likely to be successful than determining the awareness of the object of menace. In *Commonwealth* v. *Tarrant*, 367 Mass. 411, 417 n.5 (1975), an armed robbery case that dealt primarily with whether a dog could be used as a dangerous weapon (the answer was "yes"), the court, in an aside, commented "that the crucial point is whether the victim *could* reasonably have feared impending harm and it is not necessary that the victim be shown to have, in fact, experienced fear" (emphasis original).

Other cases and authorities, however, when dealing specifically with threatened battery, seem to indicate that apprehension by the target of menacing conduct is an essential ingredient of the offense of threatened battery. So, for example, *Commonwealth* v. *Delgado*, 367 Mass. 432, 436-437 (1975), speaks of "an act placing another in reasonable apprehension that force may be used" as sufficient to make out a case of criminal assault. The court also employed that language in *Commonwealth* v. *Gordon*, 407 Mass. 340, 349 (1990), in describing threatened battery, in the context of interpreting the abuse prevention statute, G. L. c. 209A. The opinion in *Gordon* also restated the *Slaney* principle that fear on the part of the target is not a required element of the attempted but unaccomplished battery category of criminal assault. In the *Gordon* case, however, the statute at issue, G. L. c. 209A, § 1(*b*) (as appearing in St. 1990, c. 403, § 2), defined "abuse" as "placing another in fear of imminent serious physical harm," and it was not a subject of discussion whether the wife was aware of the defendant's action; that was a given. The question was whether the defendant's conduct in that case was objectively menacing. The court concluded that a jury could find that the wife "entertained a reasonable apprehension that her husband might physically abuse her." *Id.* at 350. Similarly, in *Commonwealth* v. *Matsos*, 421 Mass. 391, 394-395 (1995), the victim was acutely aware of the threats made by the defendant. The threatened battery form of criminal assault was the subject of extended analysis in *Commonwealth* v. *Musgrave*, 38 Mass. App. Ct. at 520-522 & n.2. Again, awareness was not an issue.

The target of the threat, a police officer, said he was "scared stiff." *Id.* at 520. The court, citing *Commonwealth* v. *Richards*, 363 Mass. at 303, referred to the "modern rule" encompassing apprehension of danger. *Commonwealth* v. *Musgrave*, *supra* at 521. Most recently, in *Commonwealth* v. *Melton*, 436 Mass. at 295 n.4, the court said that to establish the "immediately threatened battery" form of criminal assault, the prosecution "must prove that the defendant intentionally engaged in menacing conduct that reasonably caused the victim to fear an imminent battery." That is, the target must be aware of the threat.[2] See *Commonwealth* v. *Gorassi*, 432 Mass. at 247-248.

Such is also the view of the drafters of the Model Penal Code. Section 211.1(1)(c) of the code defines as a variant of the crime of assault "attempts by physical menace to put another in fear of imminent serious bodily injury."[3] Model Penal Code § 211.1(1)(c) (1980). The commentary to the code provision explains that the crime of threatened battery came as an importation into the criminal law of the civil tort of assault, which involved a threat of harm to the plaintiff. See Model Penal Code § 211.1 comment 7, observing that the majority of jurisdictions have "assimilated the civil notion of assault into the criminal concept." Similarly, Perkins & Boyce, Criminal Law 159, 161-163 (3d ed. 1982), describes a variant of the crime of assault as characterized by an intentional "act which places another in reasonable apprehension of receiving an immediate battery," and traces the basis of threatened battery to the law of torts.[4]

Given the roots of threatened battery in tort, one understands how awareness of harm became engrafted on the crime of as-

---

[2]Both the *Musgrave* and *Melton* opinions refer to the Model Jury Instructions for Criminal Offenses Tried in the District Court Department § 5.402 (1988), which requires the government to prove "that the defendant intentionally engaged in menacing conduct that reasonably caused the victim to fear that he (she) was imminently going to be subjected to a battery by the defendant." See *Commonwealth* v. *Melton*, 436 Mass. at 295; *Commonwealth* v. *Musgrave*, 38 Mass. App. Ct. at 520 n.2.

[3]The addition of the adjective "serious" to "bodily injury" does not reflect the current state of Massachusetts law.

[4]The opinion in *Commonwealth* v. *Tarrant*, 367 Mass. at 417 n.5, remarks upon the requirement of apprehension in tort cases and that proof of apprehension is not requisite in criminal cases, but the distinction seems not to

sault in the form of a threatened battery. The tort presumes a person wronged, and, logically, a person unaware of a threat is not wronged by it. While importing awareness into the "threatened battery" branch of criminal assault was not inevitable, as the purpose of criminal law is different, it seems to have occurred, and we are obliged to examine the case before us on the basis that the occupants of the car struck by Chambers needed to have been aware of impending harm.

2. *Awareness of the occupants of the car that the defendant was aiming a car at them.* There were four occupants in the automobile that the defendant Chambers rammed into; hence the four counts of assault with a dangerous weapon. See *Commonwealth* v. *Melton*, 436 Mass. at 300 (one shot supported findings of an assault on all occupants of a car). Of those four, Kelly McCormack was a front seat passenger. Chambers had been McCormack's former love interest and, indeed, they had a child together. She had left Chambers for Brian Kelly, who was the driver and owner of the car that Chambers hit. That collision occurred at about 2:30 A.M. McCormack testified that she had noticed her car, with Chambers at the wheel, driving at the car in which she was a passenger.[5] She saw the attacking vehicle hit side to side and felt the jolt. Occupants of the Kelly vehicle could leave it only by the passenger side. McCormack's account of the accident varied between examination and cross-examination. She had consumed more than a little strong drink before the collision. Nevertheless, in the light most favorable to the Commonwealth, her testimony warranted a finding that she apprehended the menace of Chambers driving an automobile at her.

Kelly, the driver, testified that a car coming down the street "aimed for my car and hit it." That testimony is susceptible of a reasonable inference that Kelly was aware of an imminent collision, although he did not recognize Chambers — whom he knew — as the assailant until he left his car after the crash. At

have survived in later cases. See, e.g., *Commonwealth* v. *Melton*, 436 Mass. at 300.

[5] McCormack testified that the car Chambers was driving really belonged to her but that, for reasons she chose not to explain, she had registered the vehicle in his name.

the time of the collision, Kelly thought that a drunk driver had hit him. We think Kelly's awareness that a car in motion was aiming at him satisfies the awareness criterion, even though Kelly did not know who was at the wheel of the aggressor vehicle until after the crash. We do not understand that the target of an assault must know the identity of the assailant, who might, after all, be masked.

As to the other two passengers, Nicole Robinson testified, "We got in the car. Everything was fine. And then another car hit us and backed up on the car. And we got out to see what happened. We thought it was a drunk driver." We do not think her testimony can be read to mean that she had a sense of an imminent collision. The fourth occupant, Rafael DeJesus, falls in the same category as Robinson. He noticed nothing before: "[T]hen the car hit. . . . There was just a big boom. Then I thought it was a drunk driver."

Chambers, therefore, was entitled to a required finding of not guilty as to the counts alleging an assault with a dangerous weapon on Robinson and DeJesus to the extent those counts were based on a theory of threatened battery. The Commonwealth may retry Chambers for assault with a dangerous weapon or Robinson and DeJesus on a theory of attempted battery.

3. *Jury instructions.* For the first time on appeal, the defense claims error in the jury instruction. A party may not, of course, assign a faulty instruction as error unless that party objects before the jury retires. Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). Here, the judge charged correctly on the elements of attempted battery and threatened battery but gave incorrect illustrations of attempted battery: pointing a gun and saying, "I'll blow your head off," and cocking a bow and arrow and pointing it. Those examples illustrate threatened battery, a charge also before the jury. There is no risk of a miscarriage of justice flowing from the mislabeled illustrations. The evidence that Chambers drove the car at the Kelly vehicle was uncontested, and there need be no concern that the jury would somehow have found an attempted battery on the basis of a diminished standard.

On the indictments charging assault by means of a dangerous weapon against Robinson and DeJesus, the verdicts are vacated.

Those indictments are remanded for a new trial, at the discretion of the Commonwealth, of the defendant only on a theory of attempted battery. The judgments on the indictments charging assaults against McCormack and Kelly are affirmed.[6]

*So ordered.*

---

[6]That Chambers has completed his sentence does not render his appeal moot, because there are adverse consequences that flow from conviction of a crime. *Commonwealth* v. *Jones*, 382 Mass. 387, 396 (1981).