## Commonwealth vs. Thomas Porro.

No. 08-P-199.

Suffolk. February 12, 2009. - July 23, 2009.

Present: Kafker, Dreben, & Wolohojian, JJ.

Further appellate review granted, 455 Mass. 1106 (2009).

*Motor Vehicle,* Leaving scene of accident. *Practice, Criminal,* Instructions to jury, Lesser included offense. *Assault by Means of a Dangerous Weapon. Assault and Battery by Means of a Dangerous Weapon. Evidence,* State of mind.

At the trial of an indictment charging the defendant with leaving the scene of an accident causing personal injury in violation of G. L. c. 90, § 24(2)(*a* ½)(1), the judge's instructions to the jury did not misstate the applicable law or violate the rule of lenity, due process requirements of fair notice, or Mass.R. Crim.P. 24. [679-681]

At the trial of an indictment charging the defendant with aggravated assault and battery by means of a dangerous weapon (an automobile) in violation of G. L. c. 265, § 15A, the judge's error in giving supplemental instructions to the jury on assault by means of a dangerous weapon as a lesser included offense required reversal of the defendant's conviction of that offense, where, out of a series of swerves by the defendant of his car toward the victim's motorcycle, the indictment encompassed only the final swerve that resulted in the collision, and the judge's refusal to limit the instruction to the final swerve created a substantial risk that the defendant was convicted of a crime for which he was not indicted by the grand jury, namely, attempting to hit or frighten the victim during an earlier swerve [681-682]; however, the Commonwealth could retry the defendant on the lesser included offense of assault by means of a dangerous weapon under an attempted battery theory, where the evidence of the defendant's final swerve was sufficient to support a conviction of that offense [682-683].

In the circumstances of a criminal trial, the judge's exclusion of certain statements relevant to the defendant's state of mind did not constitute prejudicial error. [683-684]

Indictments found and returned in the Superior Court Department on June 12, 2006.

The cases were tried before *Linda E. Giles,* J.

*Charles W. Rankin (Jonathan P. Harwell* with him) for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

KAFKER, J. Fueled by road rage, the defendant, Thomas Porro, and the victim, Frank Merlonghi, chased each other through the streets of Boston. The chase ended when the defendant's car and Merlonghi's motorcycle collided and the defendant sped away. The defendant was charged by a grand jury with aggravated assault and battery by means of a dangerous weapon (an automobile) in violation of G. L. c. 265, § 15A (count one); assault by means of a dangerous weapon (a handgun) in violation of G. L. c. 265, § 15B(*b*) (count two); and leaving the scene of an accident causing personal injury in violation of G. L. c. 90, § 24(2)(*a* ½)(1) (count three). A jury found him guilty of count one for the lesser included offense of assault by means of a dangerous weapon and count three, leaving the scene of the accident causing personal injury, and acquitted him of count two. The defendant appeals, claiming instructional errors and challenging the exclusion of certain statements. On count three, leaving the scene of an accident, we affirm the judgment. On count one, assault by means of a dangerous weapon, we reverse the judgment and set aside the verdict. The Commonwealth may, however, retry him on this count under the attempted battery theory of assault with a dangerous weapon.

*Background.* The jury could have found the following facts: On March 29, 2006, the defendant, a special agent with the United States Department of Commerce, Office of Export Enforcement (department), was driving his government-issued car toward the South Boston section of Boston. As he turned onto Dorchester Avenue, he almost collided with a motorcycle driven by Merlonghi's friend, Bartley Loftus. Merlonghi drove his motorcycle alongside the defendant's car and engaged him in a loud shouting match. The two men continued the argument as they turned left on Summer Street. After that turn, the defendant began swerving his car toward Merlonghi. At some point, the defendant took out a gun. The defendant sped ahead and again almost hit Loftus. Merlonghi chased after the defendant and pulled up to the left side of his car. The defendant then pulled the steering wheel sharply to the left and the two vehicles collided. As a result of the collision, Merlonghi suffered serious bodily injury.

After colliding with Merlonghi, the defendant sped away. Although he had a cellular telephone and a radio in his car, he

did not call the police. He drove less than a mile, possibly even less than one-half mile, and then stopped to inspect his car. From there, he drove directly home. Although he knew that he was required to report any accident involving his government-issued vehicle to his supervisor by the next business day, the defendant did not do so. The defendant knew the department was responsible for repairing his vehicle, but he brought the car to a repair shop in New Hampshire for his brother-in-law to fix at the defendant's expense. He told his brother-in-law that he had hit a curb. It was estimated that the cost to the defendant to repair the car, for parts alone, would have been at least $2,000 to $3,000.

Immediately following the collision, Loftus called the police and reported the defendant's license plate number. The police discovered that the license plate was registered to the defendant but under the control of his government employer. Six days after the accident, the police visited the defendant's supervisors and told them about the incident. This was the first they had heard of it. One of the supervisors informed the defendant that the police were claiming he was involved in a hit-and-run accident. Later that day, the defendant turned himself in to the police and was arrested.

*Discussion.* 1. *Leaving the scene of an accident after causing personal injury.* The defendant testified at trial that at the time of the collision, he did not realize that he had hit Merlonghi. According to the defendant, he drove away because he had heard an "incredibly loud, short crack" and believed he had been shot at. He stopped less than a mile away, possibly even less than one-half mile away, when he was sure no one was following him. At this point, he inspected his car and discovered a hole in the left rear window. From his training and experience, he knew that the hole was inconsistent with a gunshot. He knew he was required to report all accidents involving his government-issued vehicle to his supervisors and the local authorities, but did not do so. He also knew that he was required to stop at the scene of any accident involving his government-issued vehicle and take certain actions such as helping any victims. The defendant, however, did not stop at the scene of the accident. Instead, he drove the car home.

At the close of trial, the judge instructed the jury as follows: For count three, leaving the scene of an accident, the fourth and fifth elements of the offense were that "the defendant knew he had collided with, or caused injury in some other way, to another person" and that "after such collision or injury, [he] did not stop and make known his name, home address, and [vehicle] registration number." On the first full day of deliberations, the jury asked the judge the following question:

> "With respect to the fourth element in Count 3, does knowledge of colliding with a person mean to be contemporaneous with the incident for 'knowing' that a collision occurred? In other words, if the defendant realized he caused a collision with a person a short time after leaving the scene, is he required to return to the scene so as not to be in violation of Section 24(2)(a ½)(1) of Chapter 90?"

The next day, over defense counsel's objection, the judge instructed the jury as follows:

> "If you determine that the Commonwealth has proved beyond a reasonable doubt that the defendant knew he had collided with or otherwise caused injury to the alleged victim, then, as soon as he knew he had collided with or otherwise caused injury to the alleged victim, he was obligated to stop and provide the necessary information . . . to the alleged victim, if reasonably possible, or, if not, to someone in the alleged victim's interest or to some public officer or other person at or near the place and time of the injury."

Later that day, the jury returned a partial verdict convicting the defendant of count three and acquitting him of count two.

The defendant claims that the judge's instructions regarding G. L. c. 90, § 24(2)(a ½)(1), misstated the law and violated the rule of lenity, due process requirements of fair notice, and Mass. R.Crim.P. 24, 378 Mass. 895 (1979). We disagree.

General Laws c. 90, § 24(2)(a ½)(1), as amended by St. 1991, c. 460, provides: "Whoever operates a motor vehicle upon any way . . . and without stopping and making known his name, residence and the registration number of his motor vehicle, goes away after knowingly colliding with or otherwise causing injury

to any person not resulting in the death of any person, shall be punished by imprisonment for not less than six months nor more than two years and by a fine of not less than five hundred dollars nor more than one thousand dollars." The information must be provided to the victim, someone acting on the victim's behalf, a public officer, or another appropriate person "at or near the place and time of injury." *Commonwealth* v. *Horsfall*, 213 Mass. 232, 236 (1913). *Commonwealth* v. *Donohue*, 41 Mass. App. Ct. 91, 94 (1996).

The judge's instruction was a proper statement of the law. It did not expand the type of conduct made punishable by the statute. She merely instructed the jury that, if they found the defendant knew that he had collided with or otherwise caused injury to another person, then he was required to "stop" and provide the required information at or near the place and time of the collision. The judge's instruction neatly combined the statutory language with guidance from the case law. The instruction appropriately left it to the jury to decide whether the defendant had violated the statute when he did not stop and report the accident at or near the place and time of the collision after he heard an "incredibly loud, short crack" and then drove less than a mile away from the point of impact and discovered a hole in his rear window that he knew to be inconsistent with a gunshot.

We see no ambiguity in the law that required application of the rule of lenity. See *Commonwealth* v. *Carrion*, 431 Mass. 44, 46 (2000) ("The rule of lenity does not require, however, that absent an ambiguity we construe a penal statute most favorably to a defendant"). Nor do we accept the defendant's due process argument that it was unforeseeable that the statute would be interpreted to prohibit his conduct. Compare *Commonwealth* v. *Kwiatkowski*, 418 Mass. 543, 547 (1994), quoting from *Opinion of the Justices*, 378 Mass. 822, 826 (1979) ("It is a central tenet of our constitutional law that, as a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden should be deemed void for vagueness").

We also find no merit to the defendant's contention that this instruction violated Mass.R.Crim.P. 24. Rule 24(b) provides that the judge shall inform the parties, upon request, of her proposed

instructions prior to closing arguments. "The purpose of [this] rule is to enable counsel to argue intelligently to the jury." *Commonwealth* v. *Thomas*, 21 Mass. App. Ct. 183, 186-187 (1985). "As a general proposition, [however,] the necessity, extent, and character of . . . any supplemental instructions are matters within the discretion of the judge." *Id.* at 186, quoting from *United States* v. *Castenada*, 555 F.2d 605, 611 (7th Cir.), cert. denied, 434 U.S. 847 (1977). See *Commonwealth* v. *Serrano, ante* 1, 5 (2009), quoting from *Commonwealth* v. *Silva*, 388 Mass. 495, 507 (1983) ("The trial judge has 'discretion . . . to choose the form of expression best adapted to make the law intelligible to the jurors' "). Contrary to the defendant's assertions, the judge's response to the jury's question neither broadened the basis of criminal liability nor interfered with his ability to argue intelligently. Instead, it was an accurate, foreseeable statement of the law that the judge was well within her discretion to give.

2. *Lesser included offense.* The defendant next challenges the judge's supplemental instructions on assault by means of a dangerous weapon as a lesser included offense of assault and battery by means of a dangerous weapon. When the jury rendered a partial verdict on counts two and three, they announced that they were "hopelessly deadlocked" on count one. The next day, they asked the judge if they could convict the defendant of the lesser included offense of assault by means of a dangerous weapon (an automobile). The judge replied in the affirmative and instructed them to apply the law she had given for count two, which explained both theories of assault: attempted and threatened battery.[1]

The defendant objected on various grounds. He argued that he was only indicted for the final act of swerving that resulted in the collision and asked for an instruction limiting the jury's consideration to that one incident.[2] He further argued that threatened

---

[1]The judge had instructed the jury on count two, which had involved assault by means of a dangerous weapon (handgun), that "[a]n assault may be committed in one of two ways. First, assault is defined as an attempt or offer by one person to do bodily injury to another by force and violence. Alternatively, an assault may consist of putting a person in fear of immediate bodily injury."

[2]The indictment read that the defendant "did commit an assault and battery upon one Frank Merlonghi, by means of a certain dangerous weapon, to wit: an automobile and thereby did cause serious bodily injury to said Frank Merlonghi."

battery was not a lesser included offense of assault and battery. In addition, he claimed that instructing the jury during deliberations violated rule 24 and deprived him of his right to address the offense in closing argument. Later that day, the jury convicted the defendant of assault by means of a dangerous weapon on count one. The verdict slip did not specify the theory of assault on which the jury based the conviction, despite the defendant's request to itemize the slip.

The defendant argues that this instruction violated art. 12 of the Massachusetts Declaration of Rights. "Article 12 requires that no one may be convicted of a crime punishable by a term in the State prison without first being indicted for that crime by a grand jury" (footnote omitted). *Commonwealth* v. *Barbosa,* 421 Mass. 547, 549 (1995). There was evidence at trial of multiple swerves by the defendant of his car toward Merlonghi. The Commonwealth concedes that the indictment only encompassed the final swerve that resulted in the accident,[3] and that the judge's refusal to limit the instruction to the final swerve as requested created "a substantial risk that the defendant was convicted of a crime for which he was not indicted by a grand jury," namely attempting to hit or frighten the victim during an earlier swerve. *Id.* at 554. We agree that this preserved error requires reversal of the defendant's conviction. *Ibid.*

As the defendant correctly argues, his conviction of assault by means of a dangerous weapon was an implied acquittal on the assault and battery by means of a dangerous weapon charge. The Commonwealth, therefore, may not retry him for the latter offense. See *Commonwealth* v. *Ortiz,* 47 Mass. App. Ct. 777, 779-780 (1999). The Commonwealth may, however, retry him on the lesser included offense of assault by means of a dangerous weapon under the attempted battery theory in this indictment. The evidence of the defendant's final swerve — directed at the nearby motorcycle in the course of a dangerous back and forth chase and altercation between the two vehicles — is sufficient to support a conviction of that offense. See *Commonwealth* v. *Musgrave,* 38 Mass. App. Ct. 519, 524 n.6 (1995) ("In any event, our decision does not preclude consideration, in appropriate

---

[3]The indictment was for assault and battery by means of a dangerous weapon. The only swerve involving physical contact was the last one.

circumstances, of the attempted battery aspect of G. L. c. 265, § 15B, as a lesser included offense of assault and battery by means of a dangerous weapon"); *Commonwealth* v. *Chambers,* 57 Mass. App. Ct. 47 (2003) (Commonwealth may proceed on attempted battery indictment where defendant aimed and drove his automobile into automobile in which his former lover was a passenger).[4]

The defense essentially argues that the evidence of the collision between the car and motorcycle resulting in personal injury to Merlonghi precludes a finding of attempted battery, i.e., there was sufficient evidence to support a battery but not an attempted battery. We disagree. Given the dangerous and aggressive behavior of both the defendant and Merlonghi, in which each placed the other at risk, the question whether the defendant satisfied the elements of an attempted battery with his final swerve was for the jury to decide. In these uncontrolled circumstances, where both the defendant and victim were engaged in an ongoing speeding altercation, the fact that some sort of collision between the car and the motorcycle occurred, resulting in Merlonghi's injuries, does not preclude a jury from finding that the swerve by the defendant constituted only an attempted battery.

Because we are remanding the case for a new trial on this offense, we need not address the defendant's remaining arguments that the judge's mid-deliberation instruction violated rule 24 and his right to give a closing argument.

3. *Hearsay statements.* The defendant's final claim is that the exclusion of certain statements as inadmissible hearsay violated

---

[4]Whether the threatened battery theory of assault by means of a dangerous weapon is a lesser included offense of assault and battery by means of a dangerous weapon is less clear from the decisions in *Commonwealth* v. *Musgrave, supra,* and *Commonwealth* v. *Chambers, supra.* The Commonwealth does not argue the issue, nor do we reach it. We note that in *Chambers,* both subcategories of assault, attempted battery and threatened battery, were permitted to proceed on indictments for assault and battery by means of a dangerous weapon (automobile) after the trial judge directed a finding of not guilty as to battery. The issue whether threatened battery is a lesser included offense of assault and battery with a dangerous weapon, however, was apparently not raised.

The Commonwealth does contend here that they could reindict and retry the defendant for uncharged conduct, that is the earlier swerves, on the threatened battery theory of assault by means of a dangerous weapon. We decline to consider this question in the abstract, absent any such indictment.

his constitutional right to present a defense. Specifically, he contends that the judge should have admitted various statements regarding the department's budgetary issues because the statements were relevant to his state of mind. At trial, the defendant claimed that he chose not to report the accident to his supervisors or submit a claim for repair because he knew the budget was tight and he had been penalized for submitting a past claim. The Commonwealth argued that the defendant's actions showed his consciousness of guilt.

"An extrajudicial statement is not hearsay when offered to prove that the person to whom it was addressed had notice or knowledge of the contents of the statement." *Commonwealth* v. *Bregoli*, 431 Mass. 265, 273 (2000), quoting from P.J. Liacos, Massachusetts Evidence § 8.2.2, at 466 (7th ed. 1999). To be relevant to the defendant's state of mind, there must be evidence that the statement was addressed to the defendant or that he otherwise had knowledge of its contents. The Commonwealth concedes that statements made to the defendant by his supervisor, in which the supervisor told the defendant that there was not enough money to fix scratches in his car, should have been admitted. We agree.

Where, as here, the defendant objected to the exclusion of the evidence, we review the judge's decision for prejudicial error. *Bregoli*, *supra*. That is, we must determine "whether 'the error did not influence the jury, or had but very slight effect.' " *Ibid.*, quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). This error was not prejudicial. The fact that the department had refused to fix the scratches in the defendant's car was undisputed. Furthermore, the evidence would have been cumulative of other evidence that the office was on a tight budget and that the defendant had been berated and his pay raise had been held up for several months because of a prior claim.

The remaining statements that the defendant sought to admit were properly excluded. There was no evidence that the defendant had knowledge of the content of any of these statements. Without evidence that the defendant knew of the statements, they were not relevant to his state of mind and were properly excluded as hearsay.

*Conclusion.* The defendant's conviction of assault by means

of a dangerous weapon must be reversed and the verdict set aside. He may, however, be retried on this count under the attempted battery theory. His remaining conviction for leaving the scene of an accident is affirmed.

*So ordered.*