CINDY GUZMAN, executrix,[1] *vs.* ALEXANDER PRING-WILSON.

No. 10-P-1431.

Middlesex. April 4, 2011. - March 13, 2012.

Present: McHUGH, BROWN, & GRAINGER, JJ.[2]

*Negligence,* Intentional conduct. *Intentional Conduct.*

At the bench trial of a civil action brought in Superior Court arising from the
death of the plaintiff's decedent from a stab wound suffered in a physical
altercation with the defendant, the evidence supported the judge's conclu-
sion that the defendant was negligent for failing to avail himself of reason-
able alternatives to combat and for employing more force than was reason-
ably necessary to repel the decedent's attack, rather than that the defendant
acted intentionally to assault the decedent, where the judge found that
although the defendant intended to display the knife, he did not intend to
stab or cut the decedent with it, and where the judge made no finding that
the decedent was aware the defendant had a knife. [432-436]

CIVIL ACTION commenced in the Superior Court Department on
March 10, 2006.

The case was heard by *Thomas P. Billings,* J.

*Thomas B. Drohan* for the defendant.

*Elizabeth N. Mulvey* for the plaintiff.

McHUGH, J. On April 12, 2003, Alexander Pring-Wilson was
involved in a physical altercation with Michael Colono, during
which Colono suffered a fatal stab wound. The executrix of
Colono's estate, Cindy Guzman, commenced an action against
Pring-Wilson for damages. In a jury-waived trial, a judge of the
Superior Court found Pring-Wilson negligent and Colono
comparatively negligent, then adjusted the award of damages
accordingly. On appeal, Pring-Wilson argues that the judge
misapplied the law and should have found that he acted inten-

[1] Of the estate of Michael Colono.

[2] Justice McHugh participated in the deliberation on this case and authored
this opinion prior to his retirement.

tionally, foreclosing a finding of negligence. We disagree and affirm the judgment.

Neither party contests the judge's factual findings. In essence, those findings reveal that at approximately 1:50 A.M. on April 12, 2003, Colono, his cousin Sammy Rodriguez, and Giselle Abreu sat in a car parked on Western Avenue in Cambridge, waiting for a pizza they had ordered from a nearby restaurant. Pring-Wilson, walking home alone after attending a nearby club with friends, walked past the car. "All three men — Colono, Rodriguez, and [Pring-]Wilson — had been drinking." As Pring-Wilson approached on the sidewalk, Colono said out of his open window, "Look at that motherfucker, he's shitfaced," and then told Pring-Wilson to "get off the street." Pring-Wilson, who had been talking on his cellular telephone, heard that someone in the car had addressed him but did not hear what was said, so he walked back to the car and asked, "Were you talking to me?" Colono's confrontational reply was something to the effect of "Yeah, you want to do something about it?" Pring-Wilson then replied with "Fuck you" or "Fuck off," and turned to leave.

Upset with Pring-Wilson's response, Colono got out of the car and rushed Pring-Wilson. A fight began, and after about a minute, Rodriguez joined the fray, grabbing Pring-Wilson "from behind, and punch[ing] him a few times in the head, albeit from close range and without causing serious injury." At this point, Pring-Wilson pulled from his pocket a folding knife with a four-inch serrated blade that he almost always carried as a utility tool. With the knife opened, Pring-Wilson began flailing at Colono, the man in front of him. At that point, "Rodriguez was able to grab [Pring-]Wilson by the shoulders of his jacket and throw him to the ground [where he landed] on his knees and hands. [Rodriguez] heard Colono say in Spanish, 'Be careful — he has a knife.' Rodriguez hadn't seen it before, but he did now. He didn't yet realize it had been used, but assumed [Pring-]Wilson was showing it as a warning." After warning Rodriguez about the knife, Colono said, "Let's go." The two men ran back to the car and Abreu drove them away.

Initially, Colono did not realize that he had been stabbed but, in fact, he had been cut five times. The fatal wound was a stab

wound into the right ventricle of Colono's heart. The wound did not extend to the full depth of the knife's blade, though its precise depth was not measured. Two of the other wounds also were stab wounds, both three-quarters inch in depth. One, though in the chest area, did not enter the chest cavity. The other, to the left of the navel, did not enter the peritoneal cavity. The two remaining wounds were incise or slicing wounds, with respective depths of one-quarter inch and one-half inch. Neither singly nor in the aggregate would those four wounds have been fatal.

Although the complaint contained several counts alleging liability on multiple theories, the case proceeded to trial on a negligence count alone. The judge found that Pring-Wilson was negligent for both "failing to avail himself of reasonable alternatives to combat," and "employing more force than was reasonably necessary to repel the attack." Finding that Colono was comparatively negligent and Pring-Wilson and Colono were equally at fault for Colono's death, the judge decreased the damage award by fifty percent, ordering entry of judgment in the amount of "$10,000 to the Estate of Michael Colono for conscious pain and suffering, and $250,000 for the benefit of Leah Colono [his daughter], for wrongful death."[3]

On appeal, Pring-Wilson's sole claim is that, although the judge's factual findings are sound, those facts require an ultimate finding that he acted intentionally, not that he was negligent. We disagree.

"Negligence is the failure to exercise that degree of care which a reasonable person would exercise in the circumstances." *Morgan* v. *Lalumiere*, 22 Mass. App. Ct. 262, 267 (1986). In deciding whether a defendant is negligent, the trier of fact "is to ask how a person of ordinary prudence would act in the circumstances. This is the sole standard." *Goldstein* v. *Gontarz*,

---

[3]Pring-Wilson was convicted of voluntary manslaughter in connection with the incident. His conviction was overturned on appeal, see *Commonwealth* v. *Pring-Wilson*, 448 Mass. 718, 739 (2007) (affirming trial judge's order allowing defendant's motion for new trial), and he later pleaded guilty to involuntary manslaughter. At the trial of the present case, neither party introduced any evidence of, or made any reference to, the earlier criminal proceedings or their outcomes.

364 Mass. 800, 805 (1974), citing *Kane* v. *Fields Corner Grille, Inc.*, 341 Mass. 640, 641-643 (1961).

The judge found that

"[Pring-]Wilson's intent, in pulling out his knife and using it as he did, was not to kill or even to inflict serious injury on either of his assailants; it was to drive them away. In so doing, however, he was negligent: first, in failing to avail himself of reasonable alternatives to combat, and second, in employing more force than was reasonably necessary to repel the attack. On the last point, the number of knife wounds inflicted, and particularly the nature of the fatal wound, were disproportionate to the danger actually posed or reasonably apprehended."[4]

The finding was amply supported by the evidence, including Pring-Wilson's testimony and the forensic evidence.[5]

Although Pring-Wilson agrees that he did not intend to stab or kill Colono, he nevertheless argues that his actions were intentional because he purposefully removed the knife from his

---

[4]Pring-Wilson does not contest this factual finding. The judge further found that, "[a]lthough Colono started the fight, there is no evidence that [Pring-]Wilson made any meaningful effort to avoid it, for example by seeking help from whoever was in Pizza Ring, two car-lengths away."

[5]Among other things, Pring-Wilson testified as follows in response to the following questions:

*Q.*: "What did you do?"

*A.*: "In order to get up I took my knife out of my back pocket, and I used it to clear a path out in front of me."

*Q.*: "You say you used it to clear a path in front of you. Tell the Judge physically what you did with the knife."

*A.*: "I used the knife to flail away at the fellow on top and in front of me. At some point there I had a perception of it just, it cleared away in front of me and I was able to get to my feet and move towards the derelict building."

*Q.*: "Demonstrate to the Judge what you did with your arm, what you did?"

*A.*: "Flailing away trying to get the guy away from being in front of me. He was up above me, striking at me from the top."

*Q.*: "Were you attempting to stab this person?"

*A.*: "No."

pocket with the intent of scaring Colono and Rodriguez. That action amounted to the intentional tort of assault, he argues, so he could not have also been negligent. For that argument, he principally relies on *Waters* v. *Blackshear*, 412 Mass. 589 (1992).

In the first place, however, an assault at common law is an act done with the intention of causing "a harmful or offensive contact with the person of the other . . . , or an imminent apprehension of such a contact [if] . . . the other is thereby put in such imminent apprehension." Restatement (Second) of Torts § 21(1) (1965). See *Commonwealth* v. *Gorassi*, 432 Mass. 244, 247 (2000) ("Under the common law, an assault may be accomplished in one of two ways — either by an attempted battery, or by putting another in fear of an immediately threatened battery"); *Commonwealth* v. *Porro*, 458 Mass. 526, 530-531 (2010), quoting from *Commonwealth* v. *Melton*, 436 Mass. 291, 295 (2002) ("attempted battery . . . requires the prosecution to prove that the defendant 'intended to commit a battery,' " and "threatened battery requires the prosecution to prove that the defendant . . . intended to place the victim in fear of an imminent battery"). However, "[a]n attempt to . . . cause an apprehension of [a harmful or offensive] contact does not make the actor liable for an assault if the other does not become aware of the attempt before it is terminated." Restatement (Second) of Torts, *supra* at § 22. See *Commonwealth* v. *Tarrant*, 367 Mass. 411, 417 n.5 (1975) ("[I]n civil cases . . . fear or at least apprehension is essential to recovery"). See also *Commonwealth* v. *Chambers*, 57 Mass. App. Ct. 47, 49-52 (2003); *id.* at 51, citing *Commonwealth* v. *Melton*, 436 Mass. at 295 n.4 (victim must be aware of threatened battery).

Here, the judge found that Pring-Wilson did not intend to stab or cut Colono with the knife, and the evidence supports that finding. Moreover, the judge made no finding that either Colono or Rodriguez was aware that Pring-Wilson had a knife before Colono was injured, and neither party points to any evidence in the record that would support such a finding. There is no basis, therefore, for grounding the liability of Pring-Wilson on the existence of an assault.

Moreover, Pring-Wilson's reliance on *Waters* v. *Blackshear*, *supra*, is misplaced. In *Waters*, a juvenile intentionally placed a

lighted firecracker in a child's sneaker. The child was injured when the firecracker exploded. On appeal, the court held that the juvenile's conduct was intentional rather than negligent, opining that "[t]he only permissible conclusion on the uncontroverted facts is that the defendant intended an unpermitted contact," *id.* at 591, and "[t]here was no evidence to suggest that for some special reason the defendant did not know the contact . . . would be harmful." *Ibid.*

The facts of this case also stand in contrast to *Newton* v. *Krasnigor*, 404 Mass. 682 (1989). As in *Waters*, the issue of intent was the centerpiece of the decision in *Krasnigor*. There, the Supreme Judicial Court concluded that, in the absence of any evidence of a juvenile's intent when he lit a number of fires in a junior high school, the only reasonable inference was that the juvenile intended to cause property damage. The court observed, "If there had been evidence that [the juvenile] 'started a fire' for warmth, or to guide his way through the darkness, or for any other motive, we might conclude that the intent to cause some damage could not be inferred." *Id.* at 687. See *McDonald* v. *Lavery*, 27 Mass. App. Ct. 1108, 1110 (1989). Here, in contrast to both cases, there is ample evidence that Pring-Wilson did not intend to contact Colono with his knife.

Moreover, even though Pring-Wilson's display of the knife was an intentional act, that act did not preclude the judge's finding of negligence. Indeed, much negligent conduct involves some intentional act, e.g., driving at an excessive rate of speed, see *Harrison* v. *Mattapoisett*, 78 Mass. App. Ct. 367 (2010); storing a firearm in an accessible location, see *Jupin* v. *Kask*, 447 Mass. 141 (2006); or discharging an intoxicated passenger from a limousine, see *Commerce Ins. Co.* v. *Ultimate Livery Serv., Inc.*, 452 Mass. 639 (2008). Where negligence is at issue, though, the focus is on the consequences. If the actor intended the act, and the consequences, although unintended, were reasonably foreseeable, then liability for negligent conduct results. See *Luz* v. *Stop & Shop, Inc.*, 348 Mass. 198, 204 (1964); *Zinck* v. *Gateway Country Store, Inc.*, 72 Mass. App. Ct. 571, 578-579 (2008). If the actor intended the act and also intended consequences of at least the general type that followed, then liability for intentional, not negligent, conduct will follow. See

generally Restatement (Second) of Torts, *supra* at § 500 comment f ("Reckless misconduct [and, a fortiori, negligent conduct] differ[] from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results").

The judge found that Pring-Wilson intended to display the knife but did not intend to harm either of his assailants with it. The finding is supported by the evidence. The resulting judgment is affirmed.[6]

*So ordered.*

---

[6]Relying principally on *Brown* v. *Robishaw*, 282 Conn. 628 (2007); *Wegman* v. *Pratt*, 219 Ill. App. 3d 883 (1991); and *Niskanen* v. *Giant Eagle, Inc.*, 122 Ohio St. 3d 486 (2009), the trial judge based his conclusion that Pring-Wilson was negligent on a legal theory that negligence may flow from use of excessive force in self-defense. The result we reach makes it unnecessary for us to determine whether that theory is consistent with Massachusetts law.