NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-849                                          Appeals Court

COMMONWEALTH  vs.  OSWALDO O.,[1] a juvenile.

No. 17-P-849.

Suffolk.     September 6, 2018. - December 10, 2018.

Present:  Blake, Wendlandt, & McDonough, JJ.

Assault by Means of a Dangerous Weapon.  Moot Question.
    Juvenile Court, Delinquent child.  Practice, Civil, Moot
    case.  Practice, Criminal, Juvenile delinquency proceeding.
    Intent.  Due Process of Law, Juvenile delinquency
    proceeding, Notice.

Complaint received and sworn to in the Suffolk County
Division of the Juvenile Court Department on May 25, 2016.

    The case was heard by Stephen M. Limon, J.

    Eva G. Jellison for the juvenile.
    Teresa K. Anderson, Assistant District Attorney, for the
Commonwealth.

    WENDLANDT, J.  This case involves the application of the

doctrine of transferred intent to the crime of assault, which

consists of two forms:  attempted battery and immediately

_____

    [1] A pseudonym.

threatened battery. In Commonwealth v. Melton, 436 Mass. 291 (2002), the Supreme Judicial Court applied the doctrine in connection with the intent element of the attempted battery form of assault. We address now whether the doctrine applies to the intent element of the immediately threatened battery form of assault. In particular, following a bench trial, a Juvenile Court judge adjudicated the juvenile delinquent on one count of assault by means of a dangerous weapon, G. L. c. 265, § 15B.[2] On appeal, the juvenile contends the judge found only that he intended to place one specific victim[3] in fear (as to whom there was no charge) and improperly relied on the doctrine of transferred intent to satisfy the intent element of the immediately threatened battery form of assault with regard to two different victims.[4] Concluding that the doctrine of transferred intent applies to the immediately threatened battery form of assault, we affirm.

---

[2] The judge allowed the juvenile's motion for a directed finding of not delinquent on a second count, charging a municipal ordinance violation for carrying a dangerous weapon.

[3] We shall refer to this victim as "E"; his surname was not in the record.

[4] Although the trial judge's findings discuss the doctrine of transferred intent with respect to two different victims (B.H. and A.R.), the delinquency complaint charged the juvenile with only one count of assault by means of a dangerous weapon, against B.H. This discrepancy does not alter our analysis.

Background.  The judge's underlying factual findings are
not disputed.  On May 24, 2016, three high school students
(B.H., A.R.,[5] and B.H.'s friend, E) were having lunch at a
restaurant near their high school in Chelsea when the juvenile
approached them.  The juvenile was wearing a Tennessee Titans
hat, while E was wearing a Chicago Bulls hat; the juvenile asked
E to which gang he belonged and told E to "take off" his hat.
B.H. testified that he understood the Bulls hat to signify
affiliation with the MS gang.  The juvenile opened his backpack,
displaying a knife.  A.R. saw the knife.  The juvenile left the
restaurant, but remained immediately outside the restaurant with
four companions.

After finishing lunch, B.H., A.R., and E left the
restaurant together and entered the park across the street,
heading back toward their high school.  The juvenile followed
them on his bicycle, remaining approximately three meters behind
the boys.  At some point, however, the juvenile passed the boys,
arrived at a small staircase in the park, and dismounted his
bicycle.  As the boys approached the stairs, the juvenile
stopped them.  He asked A.R. whether he knew the meaning of the
Bulls hat.  A.R. replied that he did not.  The juvenile then
instructed E to take off the Bulls hat, if he did not want any

---

[5] The judge referred to these witnesses by their first
names; we refer to them by their initials.

trouble.  Following the threat, the juvenile moved behind B.H., A.R., and E, and pulled his backpack from his back to his chest. The juvenile unzipped the backpack and reached inside for the knife.  A.R. again saw the knife, and B.H. covered his hands with his sleeves to shield himself from a possible weapon.  B.H. and A.R. wrestled the backpack away from the juvenile and ran to the high school.

Procedural history.  The juvenile was adjudicated delinquent on the charge of assaulting B.H. by means of a dangerous weapon.[6]  At defense counsel's request, the judge entered a continuance without a finding until the juvenile's eighteenth birthday.[7]  Under the terms of the continuance, if the juvenile successfully completed the probationary period, the matter would be dismissed, and the juvenile would not have a record of delinquency as a result of the case.  The juvenile filed a timely notice of appeal.  Approximately half way through his probationary period, and while his appeal was pending, the juvenile filed a motion to terminate probation, which was allowed.  Thereafter, the case was dismissed.

---

[6] He was not charged with assaulting E or A.R.

[7] See Commonwealth v. Magnus M., 461 Mass. 459, 463-464 (2012) (determining that, in juvenile delinquency proceedings, G. L. c. 119, § 58, permits Juvenile Court judge to continue case without a finding notwithstanding adjudication of delinquency).

The Commonwealth moved to dismiss the appeal as moot in view of the continuance without a finding and the dismissal of the underlying case. A single justice of this court denied the motion.

Discussion. 1. Mootness. As a preliminary matter, the Commonwealth contends in its brief (as it did in its motion to dismiss) that the juvenile's appeal is moot because the case was dismissed after he agreed to the continuance without a finding. In response, the juvenile asserts that his appeal is not moot because he is currently applying for a change of immigration status, and the adjudication of delinquency and continuance without a finding could jeopardize his application. The juvenile cites several immigration decisions in which juvenile delinquency and gang affiliation were considered in connection with the denial of a request for a change in immigration status[8] and, thus, he has shown that "there remain genuine and serious collateral consequences" to the judge's adjudication, and the case is not moot. Commonwealth v. Villalobos, 437 Mass. 797, 800 (2002) (quotation omitted). See id. at 799-800 (declining to dismiss as moot reported question concerning adequacy of alien warnings where defendant faced unfavorable immigration consequences from admission to sufficient facts, notwithstanding

[8] The Commonwealth provides no substantive response.

dismissal of charge after successful completion of continuance without a finding period).  See also Commonwealth v. Argueta, 73 Mass. App. Ct. 564, 566 (2009) (holding that appeal from order denying motion for new trial where defendant received continuance without finding and charges were subsequently dismissed not moot because "the defendant has a continuing personal stake in the outcome of this litigation").  Accordingly, we address the merits of the juvenile's arguments on appeal.

2.  Assault by means of a dangerous weapon.  An assault may be perpetrated in either of two ways:  an attempted battery[9] or an immediately threatened battery.  See Commonwealth v. Chambers, 57 Mass. App. Ct. 47, 48 (2003).  Acknowledging that the Supreme Judicial Court in Melton applied the doctrine of transferred intent to the attempted battery form of assault, the juvenile asserts that the doctrine should not be applied to the immediately threatened battery form of assault -- the form of assault at issue in the present case.  This form of assault requires the Commonwealth to prove that "the defendant intentionally engaged in menacing conduct that reasonably caused

_____

[9] "Under the attempted battery theory, the Commonwealth must prove that the defendant [i] intended to commit a battery, [ii] took some overt step toward accomplishing that intended battery, and [iii] came reasonably close to doing so."  Melton, 436 Mass. at 295.  The Commonwealth does not contend that the juvenile committed this form of assault.

the victim to fear an imminent battery."[10]  Melton, 436 Mass. at 295 n.4.  It is a specific intent crime, which requires the Commonwealth to show that the defendant intended to put the victim in fear.  Commonwealth v. Musgrave, 38 Mass. App. Ct. 519, 523-525 (1995), S.C., 421 Mass. 610 (1996).  The juvenile contends that the judge found that he intended only to put E in fear, and impermissibly relied on the doctrine of transferred intent in finding that he also intended to put B.H. and A.R. in fear.

a.  Direct intent.  We begin by examining the premise underlying the juvenile's argument -- namely, that the judge found that he intended only to place E in fear and relied solely on the doctrine of transferred intent with regard to B.H. and A.R.  We agree that the judge appeared to apply the doctrine of transferred intent, as discussed infra.  However, the judge also stated that "[i]ntent may be inferred on the basis of an overt act, which puts another person in fear, and that fear is reasonable, irrespective of whether the defendant actually intended bodily harm."  Continuing, he stated that "both [A.R.] and [B.H.] were in fear when [the juvenile] unzipped his

---

[10] The crime of assault by means of a dangerous weapon adds one additional element -- namely, that the assault was perpetrated by means of a dangerous weapon.  Melton, 436 Mass. at 294.  The juvenile does not contest that the knife constitutes a dangerous weapon.

backpack and reached for a knife.  That fear was reasonable considering the fact that they were with E[] when [the juvenile] had made a similar demand of E[ to remove his hat], revealing a knife to him inside [the restaurant] just minutes before."  Thus, it appears that the judge found that the juvenile intended to cause fear in B.H. and A.R. based on the juvenile's overt acts of unzipping his backpack and reaching for the knife.

Moreover, the evidence was sufficient to support such a finding, contrary to the juvenile's contention on appeal.  The juvenile approached E while he was sitting together with B.H. and A.R. in the restaurant.  The juvenile showed his knife to E and, in doing so, also to A.R.  He proceeded to follow not just E, but also A.R. and B.H. in the park.  At the stairs, he stopped all of them, asked whether A.R. understood the meaning of the Bulls hat and threatened that E should remove the hat to avoid "trouble."  He moved behind B.H., A.R., and E as he pulled the backpack to his chest, opened it, and reached for the knife, which he had previously displayed in the restaurant.  From these facts, a trier of fact could rationally find that the juvenile's intended victim was not only E (who was wearing the Bulls hat), but also E's companions.  See, e.g., Melton, 436 Mass. at 300 (noting that defendant who waved gun in direction of motor vehicle with four passengers would be guilty of four assaults by means of dangerous weapon "because his intentionally menacing

conduct would have been directed at and instilled fear in four people," despite fact that only one of the four individuals was intended victim); Musgrave, 38 Mass. App. Ct. at 524 (explaining that "in most cases intentionally menacing conduct gives rise to a reasonable inference of intent to cause apprehension").

b. Transferred intent. Nevertheless, we recognize that the judge also stated that "[a] defendant's intent may extend to others beyond the actual intended victim, including a victim who happened to suffer along with the intended victim," citing Melton, 436 Mass. at 297-298. He then found that "E[] was the intended victim," but further found that "[A.R.] and [B.H.] also were victimized by [the juvenile's] actions, given their immediate presence with E[] and their reaction to [the juvenile's] words and actions." Accordingly, the judge may have relied on the doctrine of transferred intent, and we address the juvenile's arguments regarding the propriety of its application in the context of the immediately threatened battery form of assault.

Our analysis is guided by the Supreme Judicial Court's decision in Melton. In that case, the defendant shot one bullet into a car with four passengers, striking none of them. Melton, 436 Mass. at 293. The jury convicted the defendant of four counts of assault by means of a dangerous weapon on the basis of the attempted battery form of assault. Id. at 294-295. The

defendant argued that he could not have intended to commit a battery[11] as to each of the four victims because he had shot just one bullet. Id. at 295. Recognizing that only one of the passengers was the intended victim, the court affirmed each of the convictions, relying on the doctrine of transferred intent. Id. at 298. In doing so, it rejected many of the same arguments raised by the juvenile in the present case.

In particular, the juvenile objects to the application of the doctrine of transferred intent to his case because, according to the juvenile, it is a "novel" theory of law that has not been applied previously to the immediately threatened battery form of assault. Transferred intent is not novel. To the contrary, as the Supreme Judicial Court acknowledged in Melton, "We have never required that a defendant's intent be directed at the precise victim of the crime. Rather, we have long recognized the concept of 'transferred intent' in situations where the defendant's conduct harms a person other than the intended victim." Melton, 436 Mass. at 296. Indeed, in Melton, the court both announced the applicability of the doctrine to the attempted battery form of assault and applied it to the defendant's case, affirming his convictions. Id. at 298-300.

---

[11] Intent to commit a battery is an element of the attempted battery form of assault. See note 9, supra.

Further, while the court in <u>Melton</u> applied the doctrine to the attempted battery form of assault, it implicitly recognized that the doctrine applied equally to the immediately threatened battery form. <u>Id</u>. at 299-300. Specifically, the court stated that, had the defendant in that case merely waved his gun at the four passengers, he would have committed an immediately threatened battery form of assault against each of the four even though the intended victim was only one of them. <u>Id</u>. "The criminal law is designed primarily to preserve the public peace." <u>Chambers</u>, 57 Mass. App. Ct. at 49, quoting <u>Commonwealth</u> v. <u>Slaney</u>, 345 Mass. 135, 138-139 (1962). It would make little sense to allow the perpetrator of an assault against one victim to escape conviction with regard to the victim's immediate companions, who, because of proximity to the intended victim, also feared an immediate battery.

Next, the juvenile asserts that the doctrine of transferred intent violates due process by relieving the Commonwealth of its burden to show each element of the crime beyond a reasonable doubt. This same argument was rejected in <u>Melton</u>. The court explained, "[T]he requisite mens rea must be shown, but it does not need to be shown separately or independently for each victim. Rather, once established as to any victim, it satisfies that element with respect to all other victims, even if those victims are unintended or even unknown to the defendant."

<u>Melton</u>, 436 Mass. at 298. See <u>id</u>. at 296-297 (listing other jurisdictions applying principle of transferred intent to "satisfy the element of intent when a defendant harms both the intended victim and one or more additional but unintended victims").

The juvenile also claims that the doctrine of transferred intent violates due process because it provides insufficient notice of the proscribed conduct, asserting that the doctrine would allow the juvenile to be convicted of assaulting an "unknowable number" of bystanders in the park who might have heard his threat to E and thus have feared being subject to unintentional violence. Whatever the outer limits of the doctrine may be, there is no due process violation here. The juvenile approached the three high school students at the restaurant, followed each of them through the park, stopped them each at the stairs, and then placed himself behind each of them as he reached for his knife. He was not prosecuted because he instilled fear in an unknowable bystander in the park who happened to overhear his threats, but instead because he directly placed in fear B.H. and A.R. -- E's immediate companions in the restaurant and park that afternoon.[12] Holding

---

[12] To the extent that we do not address expressly the defendant's other contentions, they "have not been overlooked. We find nothing in them that requires discussion." <u>Commonwealth</u> v. <u>Domanski</u>, 332 Mass. 66, 78 (1954).

the juvenile responsible for the fear he instilled in B.H. and A.R. no more offends due process than the potential outcome acknowledged in <u>Melton</u> -- namely, that if the defendant had merely waved his gun, rather than firing it at the automobile, he could have been held responsible for the fear thereby instilled in the four passengers despite the fact that his immediately intended target was only one of them.

<u>Adjudication of delinquency affirmed</u>.