*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 11, 2020

Plaintiff-Appellee,

v

No. 347272
Menominee Circuit Court
LC No. 18-003977-FH

FRANK SAMUELLE BUELTEMAN,

Defendant-Appellant.

Before: CAMERON, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant, Frank Samuelle Buelteman, was convicted by a jury of domestic violence, third offense, MCL 750.81(5). The trial court sentenced Buelteman as a second-offense habitual offender, MCL 769.10, to 26 months to 7-1/2 years' imprisonment. We affirm.

## I. FACTS

This case arises from Buelteman assaulting the victim, who was his wife at the time. The victim testified that, on May 27, 2018, she was assisting Buelteman with his paper route. Around 11:00 or 11:30 a.m., Buelteman became angry with the victim and hit her with a shopping cart. The victim ran toward a nearby gas station, and Buelteman followed her. After Buelteman caught up with the victim, he pushed her and shook her. The victim escaped Buelteman and ran inside the gas station. A witness testified that the victim looked like she was scared and in a lot of pain. Buelteman remained outside the gas station, pacing around the parking lot. The victim's cousin, who had witnessed Buelteman push the victim, confronted Buelteman. Words were exchanged between them, and Buelteman pushed the victim's cousin three times. The victim's cousin then went into the gas station to look for the victim. When she realized that the victim was not inside, the victim's cousin went back outside and saw Buelteman push the victim onto the ground. The victim's cousin told the victim to call the police, and Buelteman fled the scene.

Law enforcement was contacted, and Buelteman was located and arrested. He was charged with domestic violence, third offense. At trial, the prosecutor introduced evidence of domestic violence incidents that had occurred between Buelteman and the victim on May 4, 2016. The jury

-1-

convicted Buelteman as charged, and he was sentenced to a term of imprisonment. This appeal followed.

## II. ANALYSIS

## A. PRIOR ACTS OF DOMESTIC VIOLENCE

Buelteman argues that the trial court abused its discretion by admitting evidence of his prior acts of domestic violence against the victim under MCL 768.27b.[1] We review a trial court's decision to admit evidence for an abuse of discretion. *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013) (citation omitted). We review de novo questions of law such as "whether a rule of evidence or statute precludes admissibility of the evidence." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

MCL 768.27b(1) provides, in pertinent part:

Except as provided in subsection (4),[2] in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

MCL 768.27b(6) defines domestic violence as follows:

(a) "Domestic violence" or "offense involving domestic violence" means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:

(*i*) Causing or attempting to cause physical or mental harm to a family or household member.[3]

(*ii*) Placing a family or household member in fear of physical or mental harm.

---

[1] Buelteman also argues that the admission of this evidence violated his right to due process and denied him a fair trial. However, because Buelteman has fully abandoned the constitutional arguments on appeal, we need not address them. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

[2] MCL 768.27b(4) excludes evidence of acts occurring more than 10 years before the charged offense, subject to some exceptions.

[3] A "household member" includes a "spouse or former spouse." MCL 768.27b(6)(b)(*i*).

(*iii*) *Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress*.

(*iv*) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested. [Emphasis added.]

"The language of MCL 768.27b clearly indicates that trial courts have discretion 'to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403.' " *Cameron*, 291 Mich App at 609 (citation omitted). This evidence "can be admitted at trial because 'a full and complete picture of a defendant's history . . . tend[s] to shed light on the likelihood that a given crime was committed.' " *Id*. at 610, quoting *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007) (alteration in original).

At trial, the prosecutor introduced evidence of other acts of domestic violence between Buelteman and the victim. The victim testified that, on May 4, 2016, Buelteman "made her" have oral sex with Buelteman's elderly relative; specifically, the victim testified that Buelteman had once "pushed [her] head down and made [her] suck it." The victim also testified that, after they left the relative's house, Buelteman "hit" her and grabbed her arm and twisted it. In addition to the victim's testimony, the police officer who investigated the May 4, 2016 incident testified regarding his recollection of the incident. The police officer testified that the victim reported that Buelteman had "threatened her with physical violence" and "then . . . forced" her to have sexual intercourse with his relative. The victim reported to the officer that, after she and Buelteman left the relative's home, Buelteman "grabbed her by the arm and twisted it" and "slapped" the victim in the face.

Buelteman concedes that his previous acts of twisting the victim's arm and slapping her were admissible under MCL 768.27b. However, he argues that evidence that he forced the victim to engage in sexual acts with his elderly relative by threatening her with physical violence and by pushing her head down "had only slight probative value." Consequently, Buelteman argues that the trial court abused its discretion by failing to exclude that evidence under MRE 403. We disagree.

MRE 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

When conducting the MRE 403 balancing test, the trial court "must weigh the propensity inference *in favor of the evidence's probative value* rather than its prejudicial effect." *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012) (emphasis added). Evidence is not "unfairly prejudicial" simply because it is damaging. Rather,

[t]he "unfair prejudice" language of MRE 403 " 'refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting

considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.' " Moreover, admission of "[e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." [*Cameron*, 291 Mich App at 611 (citations omitted; alterations in original).]

Considerations regarding prejudice include:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 Mich at 487-488.]

We conclude that the challenged evidence had significant probative value for establishing Buelteman's propensity to engage in domestic violence with the victim. See *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). See also *People v Propp*, __ Mich App __, __; __ NW2d __ (2019) (Docket No. 343255); slip op at 16. The evidence was also relevant to assess the victim's credibility, *Cameron*, 291 Mich App at 612, which was of particular importance in light of Buelteman's argument that the victim's testimony was not reliable. Finally, the other acts provided context for understanding the relationship and background of Buelteman and the victim. Thus, we conclude that this was not marginally probative evidence that risked creating unfair prejudice. *Id*. at 611.

Although Buelteman claims that the other-acts evidence was dissimilar to the May 27, 2018 incident, the other-acts evidence involved the same victim and demonstrated a pattern of violence by Buelteman against the victim, thereby adding to its probative value. The risk that the jury would be distracted by extraneous considerations, such as bias, sympathy, anger, or shock, was addressed by the trial court's instructions to the jury about the permissible use of the other-acts evidence. Specifically, the trial court instructed the jury members that they could consider the prior acts to determine whether Buelteman committed the charged offense, but could not convict Buelteman solely because they believed he was guilty of the other bad conduct. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Additionally, the prosecutor's presentation of the other-acts evidence was limited to factual descriptions of the other acts of domestic violence. Detailed evidence was not presented concerning the sexual act that the victim performed on Buelteman's relative. Therefore, the evidence was unlikely to inflame the jurors' passions such that they would be unable to rationally determine Buelteman's guilt or innocence. Furthermore, although Buelteman takes issue with the prosecutor's statements about the May 2016 incidents during opening and closing arguments, the record does not support that the jury was confused as to which instances of assault they were asked to focus on. The prosecutor made it clear in his questions to the victim and the investigating officer that he was asking about prior acts, and the prosecutor clearly identified the date of the May 4, 2016 incidents when examining the police witness. During closing arguments, defense counsel

argued that the jury should not convict Buelteman based on evidence of his past behavior. Therefore, we conclude that the trial court did not abuse its discretion by admitting the evidence under MCL 768.27b.

Furthermore, even if we were to conclude that the trial court abused its discretion by admitting the challenged evidence under MCL 768.27b, the error would be harmless. An error is harmless if it affirmatively appears that it is more probable than not that the error was outcome determinative. *Lukity*, 460 Mich at 495-496. "An error is 'outcome determinative if it undermined the reliability of the verdict'; in making this determination, this Court . . . 'focus[es] on the nature of the error in light of the weight and strength of the untainted evidence.' " *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010), quoting *People v Krueger*, 466 Mich 50, 54; 643 NW2d 223 (2002) (alteration added).

The victim testified that, on May 27, 2018, Buelteman was "violent," yelled at her, and called her names. The victim also testified that, after Buelteman hit her with a shopping cart, she ran to a nearby gas station. According to the victim, Buelteman chased her and pushed her down. The victim testified that she went inside the gas station, that law enforcement was contacted, and that Buelteman was arrested.

The victim's testimony was corroborated by the testimony of three other witnesses. An eyewitness testified that, around 11:00 or 11:30 a.m. on May 27, 2018, she heard people arguing. The eyewitness testified at trial that she saw a man who looked like Buelteman chase "a girl" and hit her with a shopping cart. The eyewitness testified that the female "fled" and that Buelteman chased her again. The eyewitness further testified that Buelteman pushed and shook the female, who later ran inside a nearby gas station. According to the eyewitness, Buelteman remained outside the gas station. The eyewitness noted that the female "looked like she was in a lot of pain" and that she "was scared a lot." The victim's cousin testified that she saw Buelteman push the victim in the gas station parking lot on May 27, 2018, and that she saw the victim run inside the gas station. According to the victim's cousin, the victim was crying. When the victim's cousin confronted Buelteman and told him to "keep his hands off of" the victim, Buelteman did not deny that he had assaulted the victim. Rather, he became defensive and instructed the victim's cousin to " 'F' off." Later, the victim's cousin saw Buelteman push the victim to the ground in the parking lot. The police officer who arrived at the scene to investigate the complaint of domestic violence testified that the victim reported to him that she had gotten into an argument with Buelteman and that he had hit her with a shopping cart and chased her. According to the police officer, the victim further reported to him that Buelteman shook her twice and that she went into the gas station after she was able to get away from him. The officer noted that the victim appeared to be "scared" and "frightened."

Although Buelteman argues that the testimony of the victim, the eyewitness, and the victim's cousin was not reliable, "[w]e do not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence[.]" *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Furthermore, the testimony of the victim's cousin supports that, after she told the victim to call law enforcement, Buelteman fled the scene. See *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008) (holding that evidence of flight is admissible to show consciousness of guilt). The officer who arrived at the scene to investigate testified that Buelteman was not present and had to be located by another member of law enforcement.

Thus, given the testimony of these witnesses and the fact that Buelteman fled the scene, there was overwhelming evidence of Buelteman's guilt. Therefore, even if we were to conclude that the trial court abused its discretion by admitting the other-acts evidence, Buelteman would not be entitled to a new trial because it is not more probable than not that admission of the other-acts evidence undermined the reliability of the verdict.

## B. SENTENCING

Buelteman next argues that he is entitled to resentencing because the trial court improperly assessed 10 points for offense variable (OV) 9, MCL 777.39. Specifically, Buelteman argues that there was only one victim and that, although there was evidence that he pushed the victim's cousin, this conduct occurred after the sentencing offense was completed. We disagree.

"A claim that the sentencing guidelines range was improperly calculated is preserved by raising the issue at sentencing, in a motion for resentencing, or in a motion to remand." *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016) (quotation marks and citation omitted). In this case, Buelteman objected to the assessment of OV 9 at sentencing and in a motion to remand.[4] Therefore, the issue is preserved.

This Court reviews de novo whether a trial court properly interpreted and applied the sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). "We review for clear error the trial court's factual determinations, which must be supported by a preponderance of the evidence." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). "We review de novo whether the factual determinations were sufficient to assess points under OV [9]." *Id*. "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993).

"The sentencing offense determines which offense variables are to be scored in the first place, and then the appropriate offense variables are generally to be scored on the basis of the sentencing offense." *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008). As already noted, when sentencing Buelteman for the domestic violence offense, the trial court assessed 10 points for OV 9. In order to assess 10 points for OV 9, two to nine victims must have been "placed in danger of physical injury[.]" MCL 777.39(1)(c).

In this case, Buelteman argues that the trial court improperly assessed 10 points for OV 9 because the victim's cousin was not placed in danger of physical injury "during the sentencing offense." Buelteman is correct that "OV 9 does not provide for consideration of conduct after completion of the sentencing offense" and that "it must be scored . . . solely on the basis of [the]

---

[4] Buelteman filed a motion to remand this case to the trial court for resentencing on the basis that OV 9 was improperly scored. This Court denied the motion, stating that "[d]enial of remand is without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Buelteman*, unpublished order of the Court of Appeals, entered July 22, 2019 (Docket No. 347272).

defendant's conduct during [the sentencing offense]." *McGraw*, 484 Mich at 133-134. However, we conclude that a preponderance of the evidence supports that the victim's cousin was placed in danger of physical injury during the course of the sentencing offense. Specifically, the record supports that, at all relevant times, the victim was placed in apprehension of an immediate battery.

As already discussed, the victim's cousin testified that she saw Buelteman push the victim from behind and that the victim was crying. After the victim ran inside the gas station, Buelteman remained outside and "strutt[ed] back and forth," as if he was waiting for the victim to come out of the gas station. While the victim was still inside the gas station, the victim's cousin confronted Buelteman, and Buelteman pushed the victim's cousin in the chest three times. Sometime thereafter, the victim exited the gas station and Buelteman inflicted additional abuse upon her by pushing her to the ground. Thus, the record supports that the victim's cousin was placed in danger of physical injury during the course of Buelteman's assault on the victim. See *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004) (a criminal assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery) (quotation marks omitted).

Importantly, case law supports that individuals who attempt to intervene during the commission of a crime are considered victims for purposes of scoring OV 9. See e.g., *People v Morson*, 471 Mich 248, 252, 261-262; 685 NW2d 203 (2004) (holding that a nearby innocent bystander who responded to a robbery victim's "call for help" was properly considered a second victim for purposes of scoring OV 9 even though the bystander was not "actually robbed"); *People v Fawaz*, 299 Mich App 55, 58, 62-63 n 2; 829 NW2d 259 (2012) (holding that a trial court erred by failing to consider firefighters "who spent over a half-hour combating the blaze" when scoring OV 9).

Finally, although Buelteman argues that the victim's cousin "did not appear to think herself in . . . danger," we conclude that this is not dispositive given that "a victim's subjective experience of the emotion of fear is not an element of assault[.]" See *People v Davis*, 277 Mich App 676, 688; 747 NW2d 555 (2008), vacated in part on other grounds 482 Mich 978 (2008). Furthermore, the plain language of MCL 777.39(1)(c) only requires that two to nine victims be "placed in danger of physical injury[.]"[5] It does not require that a victim subjectively fear a physical injury. Because a preponderance of the evidence supports that the victim's cousin was in danger of physical injury during the ongoing assault on the victim, we conclude that the trial court did not err by assessing 10 points for OV 9.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra
/s/ Anica Letica

---

[5] Statutes are interpreted according to their plain language. *People v Mattoon*, 271 Mich App 275, 278; 721 NW2d 269 (2006).